STATE, *ex rel.* AL DATO, D. ALFONSO CONGLIO LUIS PITISCI, ARSENIO CORRALL, and MARIO PULLARA, v. JOHN R. HIMES, as Judge, Criminal Court of Record, Hillsborough County.

184 So. 244.

Opinion Filed October 29, 1938.

*Leroy Allen* and *Whitaker Brothers,* for Relators;

*George Couper Gibbs,* Attorney General, *J. Compton French,* Assistant Attorney General, and *Joseph E. Williams,* County Solicitor for Respondent.

PER CURIAM.—Upon petition filed this court issued a Rule *nisi* to the resident Judge of the Criminal Court of

Record for Hillsborough County to show cause why a Writ of Prohibition should not, on the ground of second jeopardy be issued to restrain the trial of the relators on an information charging them with the commission of a felony. The respondent Judge, by the Attorney-General and the County Solicitor, filed a demurrer and also an answer or return to the Petition for Prohibition. Relators moved for a writ of Prohibition absolute notwithstanding the demurrer and return.

It is made to appear that pursuant to Executive orders of the Governor issued July 13 and August 1, 1938, the Judge of the Criminal Court of Record for Monroe County was assigned to preside over the Criminal Court of Record for Hillsborough County, beginning July 14, 1938, "and as long as may be necessary thereafter," and beginning August 1, 1938, "and as long as may be necessary thereafter," "to conduct the trial of all causes in which it may appear that the resident Judge is disqualified, and such other causes as may properly come before him in said court" (the Judge of the Criminal Court of Record for Hillsborough County was from July 14 through August 12, 1938, assigned to the Duval County Criminal Court of Record); that while the then presiding Judge in the Criminal Court of Record in Hillsborough County was conducting the trial of a felony charge against the defendants, relators here, such Judge was about 11:30 A. M. August 9, 1938, served with a Writ of Prohibition prohibiting him until further order of the court from further proceeding in the trial of the felony charge against such defendants, the writ being issued by a Circuit Judge upon the relation of a private citizen having no official or personal relation to such trial, on the ground that the Executive order of the Governor, made under the statute, assigning such Judge to try cases in the Criminal Court of Record for Hillsborough County, is ineffectual to

authorize the judge to preside at trials in such court at the time the writ was issued; that after the service of the Writ of Prohibition issued by the Circuit Judge on the Judge presiding in the Criminal Court of Record for Hillsborough County, such "court announced that it would take a five minute recess: the Judge never did return to the bench, and at noon on the 9th day of August the county solicitor excused the jury and notified them to return at 2 o'clock P. M.; the jury returned at 2 o'clock P. M. of that date and the judge was not upon the bench, and the county solicitor excused the jury and instructed them to return Wednesday morning, at 10 o'clock A. M.; the jury returned on Wednesday morning, August 10, at 10 o'clock, the judge was not upon the bench, and the county solicitor again instructed the jury to go and return at 2 o'clock P. M. of that day, August 10; at 2 P. M. the jury having entered the box, and the judge of the court not being present, the jury remained in the box until approximately 4 o'clock P. M." at which time the Clerk excused the jurors subject to the call of the Court; to which the defendants objected; that the Attorney General demurred to and answered the petition on which the Circuit Judge issued the Writ of Prohibition; that on August 10, 1938, the Circuit Judge issued a permanent Writ of Prohibition against the respondent Judge restraining him from exercising any further jurisdiction under the authority of the Executive order dated July 13, 1938, the Writ of Prohibition making no reference to the Executive order dated August 1, 1938, which was made a part of the petition on which the Writ of Prohibition was issued by the Circuit Judge; the service of the permanent Writ of Prohibition was accepted by counsel for said respondent Judge; that after the return of the resident Judge of the Criminal Court of Record for Hillsborough County, he did, on August 22, 1938, order that a mistrial is declared and the jury em-

paneled and sworn in the cause on August 8, 1938, is discharged; and that the Court will reset the cause for trial and that defendants, if they desire to plead further to the information, are allowed and required to do so at such term of the Court; to all of which the defendants objected; that on October 8, 1938, the Court sustained a demurrer to pleas of former jeopardy interposed by the defendants, and ordered the trial of the defendants set for November 7, 1938. Thereafter the petition for Writ of Prohibition issued by this court herein was filed.

"A person is in legal jeopardy when he is put upon trial, before a court of competent jurisdiction, upon an indictment or information which is sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance. And a jury is said to be thus charged when they have been impanelled and sworn. Allen v. State, (H. N. 1) 52 Fla. 1, 41 So. 593, 120 Am. Sr. 188, 10 Ann. Cas. 1085.

"The power of the court to discharge a jury who have been sworn in chief before verdict should be exercised only in case of a manifest, urgent, or absolute necessity. If the jury are discharged for a reason legally insufficient and without an absolute necessity for it, and without the defendant's consent, the discharge is equivalent to an acquittal, and may be pleaded as a bar to any further trial or to any subsequent indictment." Allen v. State (N. H. 3) supra.

"At common law if any evidence had been given, the jury could not be discharged, except in case of the most urgent necessity, until they had given a verdict. The American cases hold generally that there must be a manifest necessity for the discharge of the jury and leave the courts to determine in their discretion whether under all the circumstances of each case such necessity exists. When such necessity exists, a plea of former jeopardy will not prevail on a sub-

sequent trial. But if the jury are discharged without defendant's consent for a reason legally insufficient and without an absolute necessity for it, the discharge is equivalent to an acquittal, and may be pleaded as a bar to a subsequent indictment. Whether the discharge arose from the arbitrary act of the court, or from some mere whim or caprice of judge or jury, or from some accident or blunder, is immaterial. * * *

"It has been held that the causes which create the necessity must fall under one of three heads, namely: (1) Where the court is compelled by law to be adjourned before the jury can agree upon a verdict; (2) where the prisoner by his own misconduct places it out of the power of the jury to investigate his case correctly, thereby obtaining an unfair advantage of the state, or is himself, by the visitation of Providence, prevented from being able to attend to his trial; and (3) where there is no possibility for the jury to agree upon and return a verdict." 16 C. J. 250-251.

In Thompson v. U. S., 155, U. S. 271, 15 Sup. Ct. 73, 39 L. Ed. 146, the defendant objected to proceeding with the trial by the jury that *was discharged.*

If the Circuit Judge was without jurisdiction or power to issue the Writ of Prohibition to prohibit the presiding Judge of the Criminal Court of Record from proceeding with the trial of the defendants, relators here, on an information charging them with a felony, the service of such writ on such presiding Judge during the trial did not cause a legal necessity for the Judge to leave the Bench and thereby stop the trial without the consent of the defendants, after they had been put in jeopardy in the trial for a felony, then the demurrer to the pleas of former jeopardy as a bar to another trial for the same offense should have been overruled.

The presiding Judge did not state of record any necessity

for interrupting the trial of the felony cause, and no such necessity appears by the record here.

Section 5 of Article V of the Florida constitution provides that "The Supreme Court shall have appellate jurisdiction * * * in case of conviction of felony in the Criminal Courts;" and "shall have the power to issue writs of * * * Prohibition * * * and also all writs necessary or proper to the complete exercise of its jurisdiction."

Section 11, Article V, provides that

"The Circuit Courts * * * shall have final appellate jurisdiction * * * of all misdemeanors tried in Criminal Courts."

"The Circuit Courts and Judges shall have power to issue writs of * * * Prohibition * * * and all other writs proper and necessary to the complete exercise of their jurisdiction."

It appears from the above quoted organic provisions that the Circuit Courts have no jurisdiction over felonies "tried in the Criminal Courts;" and that the authority of the Circuit Courts to issue Writs of Prohibition is expressly limited to cases in which it is "proper and necessary to the complete exercise of their jurisdiction," which jurisdiction does not include matters relating to "conviction of felony in Criminal Courts." The Prohibition Writ issued by the Circuit Court against the Judge presiding over the Criminal Court of Record as above referred to, related directly to the trial .of felony cases in the Criminal Court of Record, and was in excess of the limitations upon the jurisdiction conferred upon Circuit Judges by the intendments of the above quoted provisions of the Florida constitution. See Frederick v. Rowe, Judge, 105 Fla. 193, 140 So. 915.

The Prohibition writ issued by the Circuit Judge against the Judge presiding in the Criminal Court of Record in the trial of a felony case being in excess of the jurisdiction of the Circuit Judge under the constitution, it is not necessary

to here discuss the apparent lack of a proper relator in the Prohibition case before the Circuit Judge, such relator being only "a citizen, resident, voter and taxpayer in and for Hillsborough County and an attorney at law and officer of the Criminal Court of Record in and for Hillsborough County, Florida" not shown to be in any way directly affected by the prosecution sought to be arrested. See *Ex parte* Levitt, 302 U. S. 633, 58 Supt. Ct. 1, 82 L. Ed. 4931; Fairchild v. Hughes, 258 U. S. 126; 42 Sup. Ct. 274, 66 L. Ed. 499; 50 C. J. 693; 17 Fla. 93.

The two Executive orders of the Governor assigning the Judge of the Criminal Court of Record of Monroe County to preside in the Criminal Court of Record in Hillsborough County are made in the name of the Governor attested by the Secretary of State and the Great Seal of the State of Florida. Such Executive orders of assignment are presumptively valid and cannot be collaterally annulled unless they are clearly shown to be void in a court of competent jurisdiction. There was a Judge subject to assignment, and statutory authority for Executive assignments.

Even if there be duly raised a question as to the scope and time limitations of the Executive orders of assignment, when they are executed as above stated, such Executive orders being made in substantial compliance with the statutory authority as to the terms of assignments, confer at least *de facto* jurisdiction on the assigned Judge; and his acts under such assignments are valid unless duly annulled by a court of competent jurisdiction.

In McCall v. Adams, Judge, 116 Fla. 558, 156 So. 524, the Executive assignment of a Circuit Judge to preside in the Circuit Court in another circuit was challenged in this court by proper parties before the trial of the relator's case was entered upon by the assigned Judge.

As the Circuit Judge was without jurisdiction or power

to issue the Writ of Prohibition to prohibit the presiding Judge of the Criminal Court of Record and from further proceeding in the trial of the defendants, relators here, for a felony and as such presiding Judge had *at least de facto* jurisdiction to preside as Judge in the trial, the service of the unauthorized writ of Prohibition upon such presiding Judge of the Criminal Court of Record did not create a legal necessity for abandoning the trial without the consent of the defendants, after they had been put in jeopardy under the felony charge against them; and such unnecessary interruption of the trial entitled the defendants to a discharge from another trial for the same felony.

The recessing of the jury by the county solicitor and the clerk of the court without the consent of the defendants, and the subsequent orders of the resident Judge of the court for a mistrial and a discharge of the jury without the consent of the defendant, were mere incidents resulting from the legally unnecessary abandonment of the trial by the presiding Judge upon being served with the illegal Writ of Prohibition. No legal necessity appearing for abandoning the trial on August 9, without the consent of the defendants, after the defendants had been put in jeopardy under the information charging a felony, the demurrer to the pleas of former jeopardy should have been overruled.

The jurisdiction of Circuit Judges under Section 5, Article V, of the State constitution, to issue Writs of Prohibition against Judges of the Criminal Courts of Record prohibiting such Judges from trying felony cases, had not been authoritatively adjudicated, when the Writ of Prohibition was issued by the Circuit Judge on August 9, 1938.

A writ absolute in Prohibition is awarded to the relators, but it will not be issued unless it is necessary to do so.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.

CHAPMAN, J., concurs specially.

CHAPMAN, J. (concurring) :

The relator in the prohibition suit in the Circuit Court of Hillsborough County, Florida, alleged he was an attorney at law and officer of the Criminal Court of Record in and for Hillsborough County, a citizen, resident, voter and tax payer of said county. It was not shown that the relator had any interest in and to the office by him attacked and then held by the Honorable William V. Albury, Judge of the Criminal Court of Record of Monroe County, Florida, and who by assignment by the Governor was the then acting Judge of the Criminal Court of Record of Hillsborough County. The relator was not authorized, neither has it been made to appear that he had sufficient interest to maintain the prohibition suit in the Circuit Court of Hillsborough County, or otherwise qualified to attack in said proceedings the right and title to office of the Honorable William V. Albury, then acting Judge of the Criminal Court of Record, by alleging insufficiencies and irregularities in the Commission or assignment executed by the Governor of the State of Florida wherein William V. Albury became the then acting Judge of the Criminal Court of Record of Hillsborough County. The authority or power assumed by the relator in the prohibition suit in the Circuit Court of Hillsborough County directed to the Honorable William V. Albury, as Acting Judge, was with the Attorney General of Florida, representing the entire people of the State and no such power or authority was vested in the said relator as a private citizen, attorney of the court, tax payer, or voter. In the case of State, *ex rel.,* Landis v. S. H. Kress & Co., 115 Fla. 189, 155 So. 823, the duty of the Attorney General in *quo warranto* proceedings was by this Court considered, and said:

"The office of Attorney General has existed both in this country and in England for a great while. The office is vested by the common law with a great variety of duties in the administration of the government. It has been asserted that the duties of such an office are so numerous and varied that it has not been the policy of the Legislature of the states to specifically enumerate them; that a grant to the office of some powers by statutes does not deprive the Attorney General of those belonging to the office under the common law. The Attorney General has the power and it is his duty among the many devolving upon him by the common law to prosecute all actions necessary for the protection and defense of the property and revenues of the state; to represent the state in all criminal cases before the appellate court; by proper proceedings to revoke and annul grants made by the state improperly or when forfeited by the grantee; by writ of *quo warranto* to determine the right of any one who claims or usurps any office, and to vacate the charter or annul the existence of a corporation for violations of its charter or for omitting to exercise its corporate powers; to enforce trusts and prevent public nuisances and abuse of trust powers. As the Chief law officer of the state, it is his duty, in the absence of express legislative restrictions to the contrary, to exercise all such power and authority as public interests may require from time to time."

In the case of *Ex Parte* Levitt, U. S. Sup. Ct. Law Edition, Vol. 82 pg. 1, Advance Sheets, wherein an attempt was made by a private citizen and member of the bar of the Supreme Court of the United States to assume the authority to question the right of Mr. Justice Black to sit as a member of the Supreme Court, in denying the petition that Court said:

"One having no interest other than as a citizen and a

member of the Bar of the Supreme Court of the United States may not question the validity of the appointment of a justice of such court.

"To entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained or is in immediate danger of sustaining a direct injury as a result of that action, and it is not sufficient that he has merely a general interest common to all members of the public.

"The motion papers disclose no interest upon the part of the petitioner other than that of a citizen and a member of the Bar of this Court. This is insufficient. It is an established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained or is immediately in danger of sustaining a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public. Tyler v. Judges of Ct. of Registration, 179 U. S. 405, 406, 45 L. Ed. 252, 253, 21 S. Ct. 206; Southern R. Co. v. King, 217 U. S. 524, 534, 54 L. Ed. 868, 871, 30 S. Ct. 594; Newman v. United States, 238 U. S. 537, 549, 550, 59 L. Ed. 1446, 1451, 1452, 35 S. Ct. 881; Fairchild v. Hughes, 258 U. S. 126, 129, 66 L. Ed. 499, 504, 42 S. Ct. 274; Massachusetts v. Mellon, 262 U. S. 447, 488, 67 L. Ed. 1078, 1085, 43 S. Ct. 597."

This Court had before it the right of a member of the Live Stock Sanitary Board to hold office in the case of Mc-Sween v. State Live Stock Sanitary Board of Florida, 97 Fla. 479, 122 So. 239, when the Court said:

"If, as it appears from the allegations of the bill, the five members of the board, who claimed title to membership, were appointed and commissioned as such, and if, as it further appears from the bill, they assumed to hold such

office and to discharge the duties thereof, they are either *de jure* or *de facto* officers. If officers *de jure,* they are legally entitled to the enjoyment of such office; if *de facto* officers, holding an office legally created and existing, then can their title be called into question in these proceedings.

The generally accepted and recognized rule is that, in the absence of statutory provision to the contrary, *quo warranto* proceedings are held to be the only proper remedy in cases in which they are available. Thus they are held to be the exclusive method of determining the right to hold and exercise a public office. 32 Cyc. 1415-22, Standard Ency. Proced; 17, and see State v. City of Sarasota, 92 Fla. 563, 109 So. 473; West v. Town of Lake Placid (Fla.), 120 So. 361; and when the remedy by *quo warranto* is available, it is held that there is no concurrent remedy in equity, unless by virtue of statutory provision. 32 Cyc. 1415, 5th Pomeroy's Eq. Jur. (5th Ed.) pp. 333." See MacDonald v. Rehrer, 22 Fla. 199; City of Sanford v. State, *ex rel.,* Preston, 73 Fla. 89, 75 So. 619; State, *ex rel.,* Moodie v. Bryan, 50 Fla. 293, 39 So. 929; State, *ex rel.,* Wurn v. Kasserman, 131 Fla. 234, 179 So. 410.

I concur in the majority opinion filed in this case.