THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. ALFRED LOCKLEAR, DEFENDANT-APPELLANT.

Argued September 13, 1954—Decided October 18, 1954.

*Mr. Louis Winer* argued the cause for appellant.

*Mr. Oscar F. Laurie,* Assistant Prosecutor of Morris County, argued the cause for the State (*Mr. John D. Collins,* Prosecutor of Morris County, attorney).

The opinion of the court was delivered by

WACHENFELD, J.   The appellant was indicted for the murder of Mabel Dukin in Morris County on October 16, 1953.   After a plea of not guilty and in answer to a demand for a bill of particulars served upon him by the State relating to his alibi, he named Floyd Allen and Edward Kelly as witnesses.

The State claimed the murder was willful, deliberate and premeditated and was committed in the perpetration of a robbery.   It proceeded upon the theory that the killing might have taken place as a result of conspiracy in which Locklear was a principal.

The agreed statement of the case admits the evidence presented "tended to show that the defendant was guilty of the offense charged," but notes there were no eyewitnesses who could identify him.   Although he admitted knowing a robbery was to be committed and that he received part of the booty, nevertheless he insisted he took no active part in it or the resulting murder and contends that Allen and Kelly were the actual perpetrators of it.

These two, who had not been indicted by a grand jury, were held by the State as material witnesses, and during the trial they both testified for the State, saying they were elsewhere and insisting they had no knowledge of the crime itself.

The trial was long, requiring 19 full trial days, and after the testimony was all in on both sides and counsel were about to sum up, a conference was requested with the trial judge and defense counsel.   The prosecutor there disclosed that in the evening following the completion of the testimony and after the court recessed, witnesses voluntarily pre-

sented themselves to the prosecutor's office and signed statements to the effect that the missing pocketbook alleged to have been carried by Mrs. Dukin at the time of the assault had been found by them in a car which they obtained from Floyd Allen and that they had deliberately destroyed it, fully cognizant of its importance.

In the presence of the jury, the prosecutor then moved for a mistrial, advising the court that the State had discovered new evidence which had been willfully suppressed, was material to the case, and might, after complete investigation, result in the trial and conviction of all parties responsible for the murder. He asserted the true ends of justice would be served best by such proceedings, as all the parties allegedly guilty would then be charged with the crime and brought to trial and adjudged on their respective merits. He announced a new complaint had been made charging the defendant, Allen and Kelly jointly with murder.

Vigorous objections to the motion for a mistrial were made on the grounds that it constituted double jeopardy, was prejudicial, and in violation of the defendant's rights. The record shows the defendant's counsel demanded and repeated his insistence many times that the court "allow this jury to hear this new evidence and to hear the new witnesses so that they, the jury, having heard the balance of the case, can determine from the new evidence which should be brought before them as to the guilt or innocence of the defendant." His objections, however, were overruled and the motion for a mistrial granted.

A new joint indictment against the appellant, Allen and Kelly was returned by the grand jury for the same offense, to which the prisoner entered a plea of *autrefois acquit*. The plea having been stricken by the court below, the prisoner appealed, claiming error and contending the discharge of the trial jury was improper and as a matter of law was equivalent to an acquittal and a discharge of the defendant.

The ruling, it is said, was arbitrary and contrary to fundamental legal principles and trespassed upon the common law and the constitutional rights of the prisoner.

There is a wealth of material on the topic of double jeopardy. Termed an ancient doctrine rooted in the common law, it is said to reflect the express provisions of the Constitution of both the State and Federal Governments, and the principle was secured by the successive Constitutions of our State. *State v. Cooper*, 13 *N. J. L.* 361 (*Sup. Ct.* 1833); *State v. Di Giosia*, 3 *N. J.* 413 (1950); *State v. Labato*, 7 *N. J.* 137 (1951). *Cf. City of Newark v. Pulverman*, 12 *N. J.* 105 (1953), pointing out the change in phraseology between the Fifth Amendment of the Federal Constitution and the double jeopardy provision of our State Constitutions of 1844 and 1947. *Art.* I, *par.* 10, *Constitution of* 1844; *Art.* I, *par.* 11, *Constitution of* 1947.

Just when a person accused is first put in jeopardy at a trial on a charge of committing a crime is a question upon which the authorities are not agreed. 1 *Wharton, Criminal Law* (12th ed. 1932), § 395, 397, *pp.* 546–567.

The general rule has been stated to be that when a person has been placed on trial on a valid indictment or information before a court of competent jurisdiction, has been arraigned and has pleaded and the jury has been impaneled and sworn, he is in jeopardy. 22 *C. J. S., Criminal Law*, § 241, p. 375; 15 *Am. Jur., Criminal Law*, § 369, *p.* 46; *State v. Midgeley*, 28 *N. J. Super.* 491 (*App. Div.* 1953), reversed on other grounds, 15 *N. J.* 574 (1954).

There seems to be abundant authority that if the jury is discharged without the accused's consent for a reason legally insufficient and without an absolute necessity for it, the discharge is as a matter of law an acquittal. See *People ex rel. Stabile v. Warden of City Prison*, 202 *N. Y.* 138, 95 *N. E.* 729 (*Ct. App.* 1911); *People ex rel. Brinkman v. Barr*, 248 *N. Y.* 126, 161 *N. E.* 444 (*Ct. App.* 1928); *Cornero v. U. S.*, 48 *F. 2d* 69, 74 *A. L. R.* 797 (9 *Cir.*, 1931); *State ex rel. Dato v. Himes*, 134 *Fla.* 675, 184 *So.* 244 (*Sup. Ct.* 1938); *Ex parte Rockwood*, 146 *Kan.* 386, 69 *P. 2d* 703 (*Sup. Ct.* 1937); *Armentrout v. State*, 214 *Ind.* 273, 15 *N. E. 2d* 363 (*Sup. Ct.* 1938); *Commonwealth v. Gray*, 249 *Ky.* 36, 60 *S. W. 2d* 133 (*Ct. App.* 1933).

In *People ex rel. Stabile v. Warden of City Prison, supra* [202 *N. Y.* 138, 95 *N. E.* 733], the court said:

"If a person accused of crime is placed upon trial therefor upon an indictment duly found and sufficient in form, and he pleads thereto and proceeds with the trial before a jury duly sworn to try the issues so joined, he is placed in jeopardy within the constitutional provisions."

Under the interpretation so given, there is no need for a conviction or acquittal on the merits. Such a contention was there disposed of by the court in these words:

"Although the discharge of the jury was not in form an acquittal of the defendant, it was in effect an acquittal."

Likewise, in *Bell v. State*, 44 *Ala.* 393 (*Sup. Ct.* 1869), after the jury was sworn, they were discharged without the consent of the defendant. The court on a similar issue said:

"All of the authorities agree that after some evidence in support of the accusation is submitted to the jury, the discharging of the jury without a sufficient legal reason for doing it amounts to an acquittal of the prisoner."

In *Allen v. State*, 52 *Fla.* 1, 41 *So.* 593 (*Sup. Ct.* 1906), cited with approval in *State ex rel. Dato v. Himes, supra,* the prosecutor, because of the absence of witnesses necessary to the successful prosecution of his case, moved for a discharge of the jury. On the defendant's plea of former jeopardy, the court concluded:

"If the jury are discharged for a reason legally insufficient, and without an absolute necessity for it, and without the defendant's consent, the discharge is equivalent to an acquittal, and may be pleaded as a bar to any further trial, or to any subsequent indictment."

This "absolute necessity" rule has been followed in other jurisdictions, and the reasons supporting it are obvious. Some cases speak of the possibility for abuse and oppression, if the prosecutor can rid himself of a jury merely because of his dislike for it or for some of its members or because

of the possibility that the defendant might be less prepared at a future day, or even because of a desire unnecessarily to harass the defendant. *People v. Barrett*, 2 *Caines* (*N. Y.*) 304, 2 *Am. Dec.* 239 (1805).

In *Mount v. State*, 14 *Ohio* 295, 45 *Am. Dec.* 542 (*Sup. Ct.* 1846), in determining a *nolle pros.* could not be entered after the jury had been sworn, without operating as an acquittal of the defendant, under issues similar to those we have been discussing, the court emphasized the practical necessity of the rule, for if it were otherwise, "every criminal trial becomes at once subject to numerous exigencies which may arise during its progress, either from defect of preparation, insufficiency of testimony, the unexpected absence or the impeachment of a witness on the part of the state, and which a second, third or more trials might possibly remedy."

The principle has been followed in Indiana in *Wright v. State*, 5 *Ind.* 290 (*Sup. Ct.* 1854), the holding being that whenever the prisoner has been given in charge to the regular jury, the unnecessary discharge of that jury is equivalent to a verdict of acquittal.

Kansas also adheres to the rule. See *Ex parte Rockwood*, *supra*, and *State v. Allen*, 59 *Kan.* 758, 54 *P.* 1060, 1061 (*Sup. Ct.* 1898), where it was observed that when a defendant has been placed upon trial on a criminal charge and the jury is duly impaneled and sworn, the court cannot arbitrarily discharge the jury before a verdict is returned, and a discharge in such case, unless "an absolute necessity," and "for reasons which are sufficient in law," will operate as an acquittal.

Iowa, too, has taken a firm position against permitting a second trial in the absence of some emergent circumstance. So, where the defendant pleaded double jeopardy at his second trial after the first trial court had, on its own motion, declared a mistrial for the reason that a state's witness was incompetent to testify because his name was not endorsed on the indictment, the contention was upheld on appeal. The court pointed out that to permit either the court or an attorney to stop the trial or commit the accused to the same or

another indictment at a future term because of failure of the testimony or because a witness is wanting in consequence of his name not being on the indictment, would be "trifling with the accused to a degree which cannot be tolerated." *State v. Callendine,* 8 *Iowa* 288 (*Sup. Ct.* 1859).

Michigan endorsed this doctrine in *People v. Jones,* 48 *Mich.* 554, 12 *N. W.* 848 (*Sup. Ct.* 1882), where the court said:

> "The record in this case shows an information, a plea of former acquittal in bar, a demurrer to the plea, the demurrer overruled, trial, conviction and sentence. The plea of former acquittal shows no verdict, but it shows that a jury was empanelled, and that the prosecution went into proofs by witnesses until they rested their case. Under all the authorities this entitled defendant to a verdict one way or the other, and if the jury was discharged without verdict and without any overruling necessity, this was a final discharge of the accused. * * * the judgment must be reversed and the prisoner discharged."

The State relies heavily on *State v. Van Ness,* 82 *N. J. L.* 181 (*Sup. Ct.* 1912), affirmed *per curiam,* 83 *N. J. L.* 801 (*E. & A.* 1913). Here the jury, after deliberating for eight hours, was discharged by a clerk without authority from the court. On a plea of double jeopardy, the court said:

> "That the discharge of the jury by the court in a criminal case, before a verdict has been rendered, where good cause for such judicial action exists, presents no bar to the defendant's retrial upon the same indictment, even though the discharge of the jury has been without his consent, is the prevalent view of the courts of this country and has been the settled law of this state ever since the decision in *State v. Hall* [4 *Halst.* 256], 9 *N. J. L.* 256. * * * In fact, it would seem from the reasoning of Beasley, C. J., in the opinion in the case cited [*Smith and Bennett v. State,* 41 *N. J. L.* 598, 616] that nothing but an existing judgment either of conviction or acquittal so that a plea of *autre fois convict* or *autre fois acquit* can be pleaded, will be a bar to a retrial on the same indictment."

This latter portion of the opinion is mere dictum, and there seems to be nothing in the books to give the slightest support to its broad sweep. It is based entirely upon *State v. Hall, supra,* where the defendant was brought to trial in

the Court of General Quarter Sessions in Somerset County. After hearing the evidence, the jury withdrew to consider their verdict, and, not agreeing, they came into court two or three .times and requested they be discharged but were sent back to their room for further deliberation. At about half past 11 at night they were called into court, where only 11 appeared, one of them having left the room and his fellow jurors without permission of the court or the officer attending them and gone home. The court, upon these unusual circumstances, without the consent of the defendant, discharged the jury.

On the inquiry as to whether or not this operated as a discharge of the prisoner, the court examined and evaluated many cases, the gist of which was that the court had the power to discharge the jury but it must be exercised with great caution and only after every reasonable endeavor to obtain a verdict had been found unavailing. It concluded the discharge in the case in question was necessary and proper, saying:

"If the court is satisfied that the jury have made long and unavailing efforts to agree, that they are so far exhausted as to be incapable of further discussion and deliberation, *this becomes a case of necessity and requires an interference.*" (Italics added.)

The rule as to the power to discharge the jury was emphasized again in this case, and was termed "delicate" and said to exist "in case of extreme and absolute necessity."

The case cites *U. S. v. Perez*, 9 *Wheat.* 579, 6 *L. Ed.* 165 (1824), which we will again refer to hereafter. There the court held that in certain instances there was authority in the court to discharge a jury from giving any verdict, but they said it should be "used with the greatest caution, under urgent circumstances and for very plain and obvious causes; and in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner."

Other cases therein set forth hold that such discretion cannot be exercised except where there is "extreme necessity,"

and there is no legal justification for the discharge of the jury unless there is an "impossibility of proceeding with the instant trial."

In the federal jurisdiction, we find *U. S. v. Perez, supra,* to be the lodestar of the decisions. There the trial judge, without the consent of the defendant or the Government, discharged the jury because its members were unable to agree. The defendant sought his discharge as a matter of right, claiming he could not be tried again.

Although the United States Supreme Court, under these circumstances, determined the matter rested in the discretion of the trial judge, it nevertheless urged, as we have observed above, extreme caution in its exercise.

In *Cornero v. U. S., supra,* the Circuit Court of Appeals for the 9th Circuit found error in a ruling of the trial court that the defendant was not twice put in jeopardy where a jury was impaneled and was discharged on the district attorney's representation that he was unable to proceed because of the absence of necessary witnesses who had not been subpoenaed but who were under bond to appear in court for sentence on the day of the trial. See Annotation, 74 *A. L. R.* 797.

The *Cornero* case involved the application of the Fifth Amendment of the United States Constitution, which was also the basis for the defendant's contention of double jeopardy in *Wade v. Hunter,* 336 *U. S.* 684, 69 *S. Ct.* 834, 93 *L. Ed.* 974 (1948). There the United States Supreme Court observed that a trial could be discontinued "when particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends of justice."

Measured by the rule of *U. S. v. Perez, supra,* the second court martial proceeding of a soldier for an offense punishable under the Articles of War, whose first trial was not completed, was deemed not to be the kind of double jeopardy prohibited by the Fifth Amendment. In the *Wade* case, *supra,* the defendant had been partially tried and the charges were withdrawn and transmitted to another military unit stationed in the vicinity of the alleged offense. This was

necessitated by the Army's advance into Germany having so increased its distance from the residence of witnesses that the case could not be completed within a reasonable time.

The United States Supreme Court, in *Brock v. North Carolina*, 344 *U. S.* 424, 73 *Sup. Ct.* 349, 351, 97 *L. Ed.* 456 (1952), considered whether or not, under the circumstances presented, there was a violation of the due process requirements of the Fourteenth Amendment.

The prosecution there encountered difficulty in its proof because two participants in the crime, who in a separate trial had been found guilty but had not yet been sentenced, refused to testify for the state on the ground of self-incrimination, asserting their intention to appeal the convictions. A motion for mistrial was granted, and after final judgment had been entered against the two other participants, the defendant was again tried and convicted, despite his plea of double jeopardy. The convicted participants willingly testified for the state in the second trial. The Supreme Court of North Carolina affirmed the conviction.

The United States Supreme Court likewise affirmed, reiterating the rule enunciated in *Wade v. Hunter, supra*:

"A trial can be discontinued when particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends of justice."

Noting that North Carolina had on many occasions held no double jeopardy attached where a mistrial was granted on these facts, it based its conclusion on the premise that in that state this had long been the common-law rule.

The result seems an exception to the general rule. Chief Justice Vinson, in his dissenting opinion, emphasized there was no case in any other jurisdiction supporting the North Carolina procedure. He stressed the singularity of the ruling and the result and implied it was strictly limited to that particular state.

In the case *sub judice*, oral argument brought with it much more light than was shed by the printed record. Although the State suggested on the record that the mistrial "is in

order because of newly discovered evidence" and it would not be detrimental to the prisoner because "some of the information might possibly substantiate some of his testimony," the prosecutor admitted freely on oral argument that the newly discovered evidence would not strengthen the State's case but, as a matter of fact, would probably weaken it and be of advantage to the prisoner.

The testimony had been completed; both the State and the defendant had rested; 19 days had been consumed by the trial; the defendant had testified fully and disclosed the minutest details of his defense on direct and cross examination. Then facts were unearthed which were designated newly discovered evidence.

In this development, the first inquiry suggested is whether the new evidence could have been presented to the then jury without undue hardship to either side. If this could have been done, there was no need for a mistrial, the granting of which the adjudications show to be a hazardous undertaking under all but a few circumstances.

The record demonstrates the witnesses to supply the new facts were available, and no logical reason is advanced by the prosecutor why the trial should not have been proceeded with.

Even assuming otherwise, we have grave doubts as to the right of the State to seek a mistrial on newly discovered evidence which admittedly favored the prisoner and tended to exculpate rather than incriminate him.

The defendant was entitled so to move if he desired, but he declined to accept the newly proffered assistance and demanded the trial continue.

Furthermore, the prosecutor frankly disclosed that he was apprehensive concerning the probable acquittal of the defendant in the trial then pending and desired to retry the prisoner jointly with two witnesses the State had used in rebuttal who are now defendants. This was the basic reason for the application for a mistrial.

The cases and textbooks will be searched in vain to discover judicial support for the disposition here made.

The record does not show it was "impossible" to proceed with the original trial, and the circumstances relied on did not create an absolute or an overriding necessity, nor did they constitute "sufficient legal reason" for a mistrial as required by many cases.

These, according to the vast weight of authority, are the only criteria which will lawfully warrant a dismissal of a jury without the defendant's consent in a criminal case after it has been impaneled.

We are regretfully compelled to conclude that what occurred here was tantamount to an arbitrary discharge of the jury without sufficient legal justification.

Assuming a failure of justice in the instant case, it is outweighed by the general personal security afforded by the great principle of freedom from double jeopardy. Such misadventures are the price of individual protection against arbitrary power. *State v. DiGiosia, supra.*

The plea of *autrefois acquit* is reinstated and sustained and the indictment as against this defendant is dismissed.

JACOBS, J., concurring in result.

*For reversal*—Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Chief Justice VANDERBILT—1.