51 N.J. Super. 175 (1958)
144 A.2d 19
THE STATE OF NEW JERSEY
v.
DOMINGOS PRETO, LEROY NEIGHBOUR, CHARLES METZ, HOWARD W. COBBS (WHO IS NAMED AS A CO-CONSPIRATOR, AND NOT AS A CO-DEFENDANT), DEFENDANTS.
Superior Court of New Jersey, Law Division  Criminal.
Decided July 9, 1958.
*176 Messrs. Ryan and Saros, attorneys for defendant Domingos Preto (Mr. John F. Ryan appearing).
Mr. H. Douglas Stine, prosecutor of the pleas of Union County (Mr. Cuddie E. Davidson, Jr., appearing).
*177 BARGER, J.C.C. (temporarily assigned).
This defendant, by indictment No. 92, January 1955 term, was indicted under two counts. The first count charged the defendant with the offense of bookmaking under N.J.S. 2A:112-3, and the second count charged the defendant with the offense of conspiracy to violate the bookmaking statute contrary to N.J.S. 2A:98-1 and 2A:98-2.
Indictment No. 92 came on for trial and the jury was impaneled and sworn on January 9, 1957. It was late afternoon and the court recessed the trial of the cause until 10 A.M., January 10, 1957. At this point no testimony had been taken or evidence produced in the trial, and before the resumption thereof on January 10, 1957, as the record will indicate, Mr. John F. Ryan, attorney for the defendant, informed the court and Mr. Richard Muscatello, the assistant prosecutor appearing for the State, that it had just been brought to his attention that the mother of one of his clients, who was the defendant in another criminal trial to follow the trial of this cause, was a member of the jury then impaneled and sworn for the trial of this cause. Mr. Muscatello, in behalf of the State, then moved before the court that a mistrial be granted on two grounds, the first ground being that one of the members of the jury was the mother of one of the clients of defense counsel; and the second being that the State had newly discovered evidence.
At this point the court inquired of the prosecutor as to whether or not he was satisfied with the principle of double jeopardy as it might appear in this case in the event that the court granted a mistrial. Both counsel indicated that they were not fully and completely familiar with the effect of a mistrial in the application of the principle, but the prosecutor insisted upon the granting of his motion for a mistrial and it was accordingly granted by the court.
Thereafter the defendant was indicted under indictment No. 362, January 1956 term, on two counts. In this indictment the first count charges the defendant with the offense of conspiracy to violate the bookmaking statute contrary to N.J.S. 2A:98-1, and it is a similar charge to that *178 contained in the second count of indictment No. 92. The second count in indictment No. 362 charges the defendant with bookmaking in violation of N.J.S. 2A:112-3, which is a similar charge to that contained in the first count of indictment No. 92. The only difference in the two indictments is that in the last-mentioned indictment there are additional defendants named, these persons having been set forth in indictment No. 92 as being unknown except as to the co-conspirator Howard W. Cobbs. As to this defendant the offenses charged are the same in both indictments. Apparently the newly discovered evidence referred to by the prosecutor in the motion for a mistrial during the trial under indictment No. 92 is the securing by the State of the names of those persons referred to in that indictment as unknown.
Both indictments were presented to and assigned by Judge Walter L. Hetfield, III, assignment judge for Union County, to the County Court for trial.
The defendant, Domingos Preto, now moves to dismiss indictment No. 362 on the ground that this indictment subjects him to double jeopardy, said defendant contending that the granting of the mistrial motion during the trial of indictment No. 92 results in acquittal therein and double jeopardy under any charge growing out of the same identical act or acts as set forth in indictment No. 362.
The Court at this point notes that indictment No. 92, referred to herein, is still pending and no judgment has been rendered therein as it still remains in its mistrial status. There is no motion here addressed to indictment No. 92; however, the disposition of this motion must, out of necessity, concern and include the legal status of indictment No. 92. The court, for the purposes of this motion and complete adjudication, will determine the legal status of indictment No. 92.
It has been held in this State that the pendency of an indictment or indictments is not double jeopardy unless proceedings creating such jeopardy have attached *179 under another indictment for the same offense, State v. Faulks, 97 N.J.L. 408 (Sup. Ct. 1922); State v. Janiec, 20 N.J. Super. 471 (App. Div. 1952), so that as to indictment No. 362 its mere pendency does not create double jeopardy unless such jeopardy exists as a result of a legal conclusion that the mistrial granted during the trial of indictment No. 92 amounts to a previous acquittal of the same offense alleged under both counts of indictment No. 362.
There is some misunderstanding in the cases concerning the meaning of the pleas of autrefois acquit, autrefois convict and res judicata. The plea of autrefois acquit is a plea to bar further criminal action on the ground that the defendant has already been charged, tried and has been acquitted of the same offense. The plea of autrefois convict is a plea to bar further criminal action on the ground that the defendant has already been charged, plead or tried and convicted of the same offense. Res judicata, a phrase used in civil law, is a plea that there has been a final judgment, in a cause involving the same parties, as the result of a hearing on the merits, by a court of competent jurisdiction, as to the issues presented in the proceedings to which the plea is addressed; Black's Law Dictionary (4th ed.), pages 170 and 1470 (1951); State v. Locklear, 16 N.J. 232 (1954). We are herein concerned with a plea of autrefois acquit, commonly known, recognized and referred to in our law as one of the pleas of double jeopardy.
The plea of double jeopardy is an ancient principle and was well established and rooted in the common law. It has its basis not only as a principle in the law, but also as a principle on moral grounds to the effect that right-thinking people would regard a person being tried more than once for the same wrong, unfair and improper. The principle is a part of our Federal and State Constitutions. In our Federal Constitution it is set forth in the Fifth Amendment in the following language: "Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." In our State Constitution it is set forth in Article I, *180 paragraph 11, in the following language: "No person shall, after acquittal, be tried for the same offense."
The controlling legal question on which our decision must rest is whether, under the mistrial circumstances occurring in the trial of indictment No. 92, there was in legal effect an acquittal of the defendant.
The varying phraseology of the constitutional guarantees against double jeopardy, and the debates which occurred in the various constitutional conventions concerning this phraseology, indicates and suggests that a former conviction, that is, the plea of autrefois convict, raises varying problems from those that result from a former acquittal under the plea of autrefois acquit. Although the result is the same in legal effect insofar as any later criminal action is concerned, the real basis of the two pleas are somewhat different. It is very evident that in the former plea there is an actual conviction, and under the legal and moral concept of what is right or wrong, society believes that the defendant should not be punished twice for the same offense. The plea of former acquittal is based on a concept and belief that an accused person should not be repeatedly harassed and subjected to trials for the same offense. There appears to be no question that this principle is deeply rooted in our judicial system. However, just when a person has been put in double jeopardy during a trial on a charge of committing a crime is not certain. This is a question upon which the authorities are not in agreement, and there is a wealth of material on the subject. There is an article on the subject containing a history of the pleas and a compilation of the cases written by the Hon. John L. Bigelow, formerly a judge of the Superior Court of this State, and contained in 11 Rutg. L. Rev. 487. There is also editorial comment concerning the plea of autrefois acquit as affected by an unwarranted discharge of a jury and its being tantamount to acquittal in 9 Rutg. L. Rev. 581. The cases in this State on the subject are reviewed and the article indicates that the discharge of a jury in a criminal case before a verdict is reached, in the absence of an "absolute *181 necessity" therefor, equals an acquittal of the accused and may be pleaded in bar to a further prosecution for the same offense as the current status of the law in this State. This article comments and summarizes the various cases in this State on the subject, including the Locklear and Midgeley cases herein cited.
It is generally held in the United States that the accused is put in jeopardy as soon as the jury is sworn, and there must be a manifest necessity in terminating the trial to avoid an acquittal; 22 C.J.S. Criminal Law § 249, p. 386. In this State the law is as definite and certain as the legal rule nationally indicated; however, it substitutes for the word "manifest" the word "absolute," and follows the "absolute necessity" rule to the effect that if the jury is discharged, without the consent of the accused, for a reason legally insufficient and without an absolute necessity for it, the discharge is as a matter of law an acquittal; State v. Midgeley, 28 N.J. Super. 491 (App. Div. 1953); State v. Locklear, supra. There appears to be abundant authority in this State that if a jury is discharged without sufficient grounds based upon absolute necessity, the discharge amounts to an acquittal, and such acquittal may be pleaded as a bar to further prosecution for the same offense. The authorities are fully set forth in State v. Midgeley and State v. Locklear, supra.
It is clear, therefore, that we are concerned here with whether there was absolute necessity to warrant the granting of a motion for mistrial over the objection thereto by the defendant. For this purpose the transcript of the trial becomes important in determining the circumstances involved and it reads as follows:
"Mr. Muscatello: May it please the Court, on the case on which the jury has been drawn on Indictment No. 92, State versus Domingos Preto, also known as `Nick,' it has come to my attention during the lunch hour that Mr. John Ryan, defense counsel in this case, had learned and I understand made known to the Court during the lunch hour that a woman on this jury 
The Court: And to you.
*182 Mr. Muscatello: And to me, your Honor please, that Mr. Ryan had made known to the Court and to the Prosecutor that a woman on the jury sitting in this matter, State versus Preto, is the mother of one of Mr. Ryan's clients, and that that client of Mr. Ryan's is on this criminal list, and in fact was in Court this morning waiting trial.
Under the circumstances, if your honor please, I respectfully submit that those facts are such that this mistrial should be granted in this case.
The Court: Is that the only reason?
Mr. Muscatello: In addition thereto we discovered evidence which was learned just within the last hour or so, which has come to my attention.
The Court: Is that material evidence?
Mr. Muscatello: I feel that it would be most material, if your Honor please.
And based on both of those grounds, a mistrial should be granted.
Mr. Ryan: Now, may it please your Honor, I don't wish to pry into the Prosecutor's case but if I were a little more apt here I might think up some way of getting some indication of just what this evidence is  it might be helpful to my client, that I should know what it is. But, passing that may I say this, your Honor: when this jury was drawn yesterday afternoon to try the instant case, the trial of another case was not yet concluded, which matter was concluded this morning.
Your Honor is well aware of the situation  stating it only for the record  at that time my client Mr. Angelo, in what we might call a third case, who indeed only an hour or so ago has retracted his plea, a former plea of not guilty and entered a plea of non vult, was not in the court room. He was not here, and I simply did not know, I don't know his mother. I never saw her in my life. But, it happens she is number 3 or 4  I think number 4  on the existing jury selected for the purpose of this trial.
Mr. Angelo came to Court again this morning as he was instructed during the process of the completion of the Stein case. He made known to Mr. Conant in my office that his mother, at least number 4 on the jury, was actually his mother. I am trying to be very frank and at the same time serious, but it is not a discomforting thought by any means to a man of my position representing a defendant in a forthcoming case. However, I made the fact known to your Honor, in the absence of the Prosecutor, and later when he was available repeated the circumstances to the Prosecutor. My purpose in doing that was not to interfere with the procedure or the process of this trial, but I felt that frankness and openness required that I make it known to your Honor, and to the Prosecutor, rather than stand mute and let it be discovered some time later, and not because I think that I was under any obligation, but I rather feel that I would be in a much nicer position if I frankly acquainted both your Honor and the Prosecutor with *183 the situation rather than have it discovered later, through other sources.
Now then, that was the reason for disclosing the fact as related to me by Mr. Angelo, through Mr. Conant, at the conclusion of the Stein trial this morning.
With regard to the Prosecutor's motion, I am not in a position to consent to it because it has always been my conviction that counsel representing a man in a criminal case is in a very different position than a defendant, for instance, in a civil matter. Although frankly and honestly I do not think so myself, but I am not prepared to assert that with any assurance or definiteness, I do not think that there is any question of double jeopardy in this situation even though the jury has been sworn and a mistrial is granted. But, on the other hand suppose I am wrong about that. I am not in a position to consent to it and maybe by that consent to fritter away some right that the defendant may have.
Only as far as I can see my duty to the defendant, while I don't consent, I merely wish to state I object to the mistrial.
Mr. Muscatello: I just would like to say that I certainly commend Mr. Ryan for his candor and frankness in bringing this to the Court's attention, and that I feel certain he at no time knew that the woman juror was the mother of this client.
The Court: Have you checked the law with reference to double jeopardy?
Mr. Muscatello: I have, your Honor  I have not checked all of the cases which are probably available on the subject.
The Court: Are you satisfied the rule does not apply?
Mr. Muscatello: If your Honor please, I am not fully and completely satisfied as to the law on the subject; it would be dishonest for me to say I am. But, in view of the circumstances, and in fairness to the State, in view of the circumstances of this new development, the fact is during the voir dire I did ask the jurors all whether they knew Mr. Ryan or Mr. Conant, or had any business dealings with them, and there was no reply to the affirmative.
The Court: It is possible she didn't know Mr. Ryan.
Mr. Muscatello: I appreciate that, but nevertheless I did ask the question.
In fairness to the State I feel that the motion should be granted.
The Court: Is that your primary reason or on the reason for this newly discovered evidence which you say you discovered?
Mr. Muscatello: On both reasons, your Honor please.
The Court: That newly discovered evidence, is it material?
Mr. Muscatello: Yes.
The Court: Do you feel the best interests of the State would be best served moving for a mistrial?
Mr. Muscatello: Yes, sir.
Mr. Ryan: I think, your Honor, I might add a word  only again for the record because it is not necessary, I am sure, for the benefit of anybody within my hearing  to state that I don't know Mrs. *184 Angelo; indeed, if I was ever in her company in my life, `if' I say, it must have been years and years ago and I did not recognize the woman. I have no recollection of her, and indeed I think that she knows me by name only because she knows that a man named Ryan represents her son.
The Court: In view of the motion and representations by counsel, primarily, that he found newly discovered evidence within the last few hours, since the State is the one who moved the case, the State is making the motion, I will grant the motion.
Mr. Ryan: I take exception to the Court's ruling."
Concerning the first ground set forth by the State on the motion, there are no compelling or necessitous circumstances indicated. The fact that one of the members of the jury, impaneled and sworn, was the mother of a client of defense counsel  and it is to be noted at this point that she had never met or had any business or other acquaintanceship with defense counsel  was not a ground for the removal of this member of the jury for cause. There appears to be no proper cause indicated from which it can be determined that this member of the jury would not have, under the oath administered, impartially heard the evidence presented and a true verdict reached thereunder. The State could have, with the permission of the court, properly examined this juror to determine if any such association, as remote as it was, would affect the ability of the juror concerned to reach a fair and impartial verdict. From the circumstances indicated in the record the court must conclude as to this ground that there was no prejudice indicated to the State or the defendant and, therefore, no absolute necessity present. This is also held to be not one of the grounds warranting the discharge of a jury as being founded upon manifest necessity, 22 C.J.S. Criminal Law § 259, p. 395. Not being manifest necessity, it follows that it cannot be absolute necessity.
The second ground indicated by the State was that it had available, as of that date, newly discovered evidence. This evidence consisted of the names of the unknown defendants alleged in the second count of indictment No. 92, and which persons are included by name in the first count *185 of indictment No. 362. The allegation of newly discovered evidence here is very similar to the situation which resulted in a mistrial and judgment of acquittal on appeal in the case of State v. Locklear, supra. Such evidence does not indicate, nor is there any contention advanced by the State, as indicated in the record, that it was impossible for the State to proceed with the trial on the date when the mistrial was granted. Analyzing the evidence mentioned indicates that the unknown parties concerned could have been properly indicted and tried separately under the circumstances, and the case of the State was in no wise jeopardized nor did the situation give rise to any necessitous circumstances, and this ground appears to the court to have been one of convenience to the State. The record does not indicate any absolute necessity or compelling reason for the making of the motion for a mistrial. State v. Locklear, supra.
The above reasoning, it appears to this court, was also in the mind of the trial court when the trial court queried the prosecutor and pointed out to him the dangers present in the insistence of the State for a mistrial.
This court finds, for the reasons indicated, that there was no absolute necessity or compelling reason for the motion for a mistrial during the trial of indictment No. 92, and finds that the defendant, under his plea of double jeopardy presented on his motion to indictment No. 362, was in fact acquitted for the same offense under indictment No. 92, and the motion of this defendant for a dismissal of both counts of indictment No. 362 is granted and a judgment may be presented accordingly. This judgment should also provide for a judgment of acquittal as to both counts of indictment No. 92.