Manuel Piñero Agosto, Petitioner, *v.* Superior Court of Puerto Rico, San Juan Part, Gerardo Carreira Más, Judge, Respondent; The People of Puerto Rico, Intervener.

No. C-65-34.     Decided March 20, 1967.

*Ángel Viera Martínez* for petitioner. *J. B. Fernández Badillo, Solicitor General, Peter Ortiz* and *E. Arcaya, Assistant Solicitors General,* for intervener.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Manuel Piñero Agosto, petitioner herein, was tried in the San Juan Part of the Superior Court, for the offenses of murder in the first degree for the death of a policeman, and violation of § 8 of the Weapons Law. Trial started on March 17, 1964. The jury was impaneled and the evidence of both parties was introduced. At the hearing of April 9, 1964, The People, after introducing a witness for rebuttal, made a contention in open court and in the absence of the jury regarding the conduct of two of the jurors, Reyes Aquino Rodríguez and Milton Rosado López. The prosecuting attorney requested that these two jurors be substituted.

The court adjourned and held a session on the following 10th, in chambers, with the presence of the defendant, his attorneys, and the prosecuting attorney, to elucidate the contention raised. In the words of the judge who presided in chambers, one of the contentions was to the effect that juror Reyes Aquino, when questioned for qualification and confronted with a question addressed to him or addressed collectively to the jury as to whether he or any relative of

his or any close friend had ever been involved in an offense of violence, juror Reyes Aquino had answered in the negative when the prosecuting attorney had proof to the contrary. In making his charge in open court the prosecuting attorney asserted having asked juror Reyes Aquino whether he had had any direct incident with a policeman, or at home, or any of his relatives, and said that he had knowledge that the juror's father was tried for murder and acquitted, and that a brother of the juror was also tried for murder and served time, and that juror Reyes Aquino concealed these facts from him and for that reason he did not challenge the juror. The judge declared that after having read the stenographic record of the impaneling of the jury it did not appear therefrom that this juror had been questioned by the prosecuting attorney on those particulars, nor did it appear that the rest of the jurors had been subsequently questioned collectively on those particulars. That juror Aquino at no time concealed anything from the parties or from the court regarding his qualifications to act as juror, and therefore, the court decided that said juror could and should remain in the trial until its termination.

As to juror Milton Rosado López, the prosecuting attorney charged that in the afternoon of April 8, 1964, and in front of a Santurce establishment, the former had said, in front of another juror, that "in that case the only witness who has said the truth is the first witness for the defense because he lives in front of the place of the occurrence, the others do not know anything and have not told the truth"; that the juror who was next to him did not answer; that at that moment a third juror arrived and Rosado López repeated the statement; that this third juror answered "that will be decided at the right time, not now," and that from there they left for the court. The prosecuting attorney also charged that at 8:40 in the morning of April 9 juror Rosado López was seen entering the room for the attorneys

who had their cases before the court and had left at 8:45 accompanied by defendant, a brother of the latter, and another person, and that when they reached the hall they parted and said "I'll be seeing you" and left in the direction of courtroom No. 3. The prosecuting attorney offered to bring evidence of those facts.

Counsel for the defense set forth that he had talked with the prosecuting attorney regarding those particulars; that as to the charge that juror Milton Rosado López had commented the evidence with other jurors, counsel for the defense did not have any evidence to introduce because he was completely unaware of the fact; that the prosecuting attorney had asserted he had evidence in that sense and counsel for the defense had relied on what the prosecuting attorney had said, and this being so "and in view of the evidence announced by the prosecuting attorney" he consented that juror Milton Rosado López be excused. Regarding the other incident the defense denied all the time that defendant had been with said juror or had talked to him, but having already accepted his substitution because he had commented the evidence, it was unnecessary for the defense to offer evidence regarding its denial. Furthermore, that because of the sole fact that it was mentioned that this juror had been connected with the defendant in said manner, although the information was not true, and as a matter of delicacy, he also acquiesced to the substitution of the juror.

The substitution having been accepted by the parties, the prosecuting attorney made a new contention on the basis that the other two jurors with whom Rosado López talked had not complied with the court's order of reporting on any intervention of any person outside or within the proceeding who commented the case, nor among themselves, up to the time of deliberation. The judge asked whether the prosecuting attorney knew who those jurors were, and the prosecuting attorney answered "the policeman could, but I have the

problem that I do not want to reveal his name." The prosecuting attorney stated further that there had been a lengthy discussion with public repercussion in relation with the charge he had made to those jurors, and that the jury had read newspaper accounts of what happened in court and asked for its discharge. The defense objected to this request altogether.

At the end of the session in chambers the court took under advisement the question regarding the request to discharge the jury. The session was again held in open court and the judge substituted juror Milton Rosado López by one of the alternate jurors. The substitution having been made, the court adjourned until the following Monday.

At the session of Monday, April 13, 1964, the court proceeded to discharge the jury over the express objection of the defense. In doing so it stated:

"Last Friday, April 10 of the current year, this court held its session in chambers to investigate a contention made by Prosecuting Attorney Félix Ortiz Juan, counsel for the People in these cases, to the effect that there had been some particular actions on the part of two jurors acting in this case. The result of this investigation disclosed that there was no basis for the complaint against juror Reyes Aquino, for which reason, as it is already known, the court did not order the substitution of this juror and determined that he should continue taking part in the proceeding.

"The parties having stipulated what the witness presented by the People would testify regarding juror Milton Rosado, the court decided that in view of the fact that juror Milton Rosado, in contravention of the instructions which the court has given repeatedly to the members of the jury as to their conduct and attitude in relation with the proceeding, one of which is not to comment the evidence or express an opinion thereon until the case is finally submitted to them, the court decided that this juror having commented certain aspect of the evidence introduced and having expressed himself as to which evidence should be believed and which should not, inferring

that he had already formed an opinion as to that aspect of the evidence, the court believed he should be substituted by one of the alternate jurors, and pursuant to the rules which govern us, Rule 127 of the Rules of Criminal Procedure, now in force in Puerto Rico, I ordered his substitution and he was substituted by José Pérez, after the corresponding drawing.

"When the session in chambers was finished or about to be finished, the court in chambers as I said before, Prosecuting Attorney Ortiz Juan raised a question which, because of its delicacy and seriousness, the court decided to take into consideration and decide today because since there was a Saturday and a Sunday when work is not performed, the court decided then that it could give more adequate thought to said contention because of the additional circumstance that that juror who was substituted on Thursday, April 8 or 9, commented the evidence in the case in public in the manner indicated by the court, did so in the presence of two other jurors who are acting in the trial, whose names are not in issue here, neither have they been mentioned, nor is it necessary to mention, but who, according to the prosecuting attorney's report, did not conduct themselves correctly from the viewpoint that one of them did not make any comment when approached by the juror who was substituted, and what the other one commented was: 'that will be decided later,' nevertheless, those two jurors also disregarded the instructions of the court that any deviation on the part of any person towards them or before any of their fellow jurors should be brought immediately to the consideration of the court for pertinent action by the latter and that was not done.

"There was another version to the effect that defendant was seen with the substituted juror on a particular occasion. Counsel for the defense has denied that version, however, it is one more element which vitiates the climate which should prevail during the trial. Lastly, this situation was originally brought to our attention on Thursday afternoon by Prosecuting Attorney Ortiz Juan, after withdrawing the jury for that purpose. The investigation was begun and the jury was dismissed until the next day. The jury was again called for the session in chambers; it was again brought to the courtroom to substitute juror Milton Rosado. The jury was charged as usual

but the fact is that because of the time elapsed since Thursday until today, to expect that the jury is not aware of what has happened would be to pretend to be utterly naive. Copies of the newspapers which have covered this situation extensively and the action taken by this court have been brought here. To say that the jury has not had access to it or that it has not seen it would be an item for Ripley. As a judge in a Superior Court said: 'we the judges do not live in a vacuum' and if the judges do not live in a vacuum much less do the jury who, no matter the instructions given, are not tied to the technical aspect of the law as are judges, attorneys, prosecuting attorneys, and those of us who deal with this matter from the juridical viewpoint.

"Therefore, it is ordered that the final edition of the newspaper El Imparcial of Friday, April 10, 1964; the final edition of El Imparcial of Saturday, April 11, 1964; the final edition of the newspaper El Mundo of Friday, April 10, 1964; the final edition of El Mundo of Saturday, April 11, 1964, be attached to the record of these cases, for further contentions which may be made regarding the determination to be made by the court today, because I believe there has been a confusion in one of those accounts as to the names of the jurors involved, but the newspapers' report is almost exact, not to say exact.

"The court understands that the climate created by all this situation by reason of the allegations on which action was already taken regarding a juror, it understands that it is not the ideal climate which should prevail in a trial of this nature, the climate in which twelve citizens must operate and act in a case like this which although it is supposed that all are the same, but there are cases which are more transcendental than others because of the nature of the offense, as in this, which is a case where a man is being prosecuted for having killed a policeman, a first degree murder which in case of a conviction may entail his spending the rest of his days imprisoned in the State Penitentiary. There are also the rights of the prosecuting attorney who comes here to represent the State, where this defendant is charged with having killed a policeman, a member of the Police. In a case like this the court believes that an emergency situation exists, that this is not the climate which should prevail for a jury to be able to serenely, ob-

jectively, impartially, hold itself immune from the impact that that climate may have on their conscience and intelligence to decide adequately a case like this where everything has affected their frame of mind. The court believes it must have affected them and it is going to proceed to discharge the jury according to the authority vested in me by the Rules of Criminal Procedure, Rule No. 144, which reads thus: 'The court may order . . . (the subdivision we mean is (d), which reads:) "If any error or irregularity should have been committed during the trial which in the opinion of the court precludes the jury from returning a fair and impartial verdict." '

"I want to make clear that the fact that this jury is being discharged does not necessarily mean that it may have a reflection on the conduct of the jury which is acting in the case, but the court repeats that all of this may affect their conscience, their mind in such a way that it may prevent them from weighing what remains of the trial to make such an important determination in a case like this, of this nature, regarding the innocence or guilt of this defendant.

"I also wish to set forth that although I hoped that this would never have happened, aside from the expenses this has represented both to the State and the defense, that we have been sitting in this proceeding for almost four weeks, that maybe in the long run, because of the impact it has had collectively, there is the press, there are the comments, this is going to be very helpful in the administration of justice in Puerto Rico because it will be rather a sensational reminder probably, of the sacredness of the jury institution, of how high we should maintain its integrity and its operation serving as prophylaxis in the search for the legal truth. For all these reasons, because I understand that I have the discretion which is sanctioned in the case law both in Puerto Rico and in the United States to determine so, the court sustains the prosecuting attorney's motion and discharges the jury in this case."

Petitioner having been tried again, he moved for a mistrial on the ground of former jeopardy. The trial court denied the motion and we issued a writ of certiorari to review that judgment. The guilt or innocence of petitioner has not yet been determined in this second trial. He maintains before

us that the respondent court erred in dismissing the motion of former jeopardy, inasmuch as (1) the judge who sat in the proceeding did not hear evidence to decide the request for discharging the jury and (2) was not justified in discharging the jury "because there was no obvious, imperious, urgent, real, or absolute need to do it."

■ The two important values in the administration of criminal justice which are present in situations like the one in the record, where a jury is discharged and the trial ends before the verdict is entered—on one hand, the guarantee of the integrity of the proceeding and the justice and impartiality of the judgment for both parties and, on the other, the constitutional guarantee which accompanies every individual of not being "twice put in jeopardy of punishment for the same offense"[1]—require the presiding judge to make the most thorough depuration of the truth of the facts invoked for discharging the jury and a mistrial in the equal protection of both values in play and in the interest of the People and the defendant. Adequate proof of the facts and to establish which of those are true by judicial methods, as we said in *People* v. *Rivera*, 67 P.R.R. 259 (1947), are fundamentally the responsibility of the presiding judge, inasmuch as regarding those true facts thus established he exercises his delicate function and as a rule not so easy to decide, in the exercise of a sound discretion, when and to what extent are the integrity of the proceeding and the pronouncement of a fair and impartial verdict adversely affected for both parties so as to make it imperative to declare a mistrial, even if it involves the constitutional

---

[1] Constitution of the Commonwealth of Puerto Rico, Art. II, § 11. *Downum* v. *United States*, 372 U.S. 734, 736, ". . . For the prohibition of the Double Jeopardy Clause is 'not against being twice punished, but against being twice put in jeopardy.' *United States* v. *Ball*, 163 U.S. 662, 669."

guarantee of the citizen of not being twice put in jeopardy of punishment for the same offense.[2]

■ Regarding the first error assigned, the position which according to the record the defense assumed could have reasonably made the judge believe that it was not necessary to substantiate with evidence the charges made by the prosecuting attorney to juror Rosado López. However, the defense took that position to the effect of the substitution of said juror by another, only request made until then by the prosecuting attorney. As to the subsequent petition to discharge all the jury acting in the case, there could have been a more effective depuration and proof of the facts, once the most serious one of them was denied by the defense, and to determine conscientiously through the proper inquiry of its members actually to what extent the jury as a whole had been injured in its mission to enter an impartial and fair verdict. The effective elucidation of the conduct of these other jurors was mandatory inasmuch as one of the serious charges of the prosecuting attorney addressed to juror Reyes Aquino, which created in part the undesirable climate of the proceeding on which the judge based the mistrial, turned out afterwards to be groundless.

■ But, basic as the preceding considerations are, for an appropriate use at law of the authority to decree a mistrial in circumstances like those of the record, the question to be decided now is whether or not, taking as a whole all the facts and circumstances appearing in the record, including among them the unsupported charge of the prosecuting attorney against a juror who continued to act and the effect on that jury, as well as the public repercussion which that

---

[2] Besides the fact that the doctrine expressly grants that discretion to the judge, Rule 144 of the Rules of Criminal Procedure authorizes the jury to be discharged: "(d) If any error or irregularity should have been committed during the trial which *in the opinion of the court* precludes the jury from returning a fair and impartial verdict," without it barring a second trial. See *People* v. *Arteaga Torres*, 93 P.R.R. 146 (1966).

and the other charges had prominently in the press, and all the other contingent consequences of those facts in the trial, the judge had a rational basis in the record to discharge the jury so as to prevent, to the best of his knowledge, a digression from justice.[3]

■■ The question as to when do the facts and circumstances present in a case, and which reasons or causes make it necessary or urgent, and when they do not, to discharge a jury in situations like the present one, seems to be somewhat in dispute in the case law. There exist principles or guides generally accepted as doctrinal standards, but in the last instance each situation has to be decided with a realistic sense in the light of its particular circumstances and facts. Hence, the margin of sound discretion recognized to the trial judge who undoubtedly is in a position—better than a court of appeal which depends on the record—to grasp at close range the living emotions of the trial and to perceive in the environment in which the trial moves with that sensibility inherent in the person who feels the responsibility that justice should be done, the effect worked on the integrity or purity thereof by certain particular events.

---

[3] The April 10, 1964 edition of El Imparcial carries a 1½ inches headline covering all the top part of its front page: "Prosecuting Attorney Accuses Two Jurors." The third page of the same edition and in a three-column spread reads: "Prosecuting Attorney Requests Court to Eliminate 2 Members of the Jury," and further on: "Very Serious Incident." In its April 11 edition, also in a three-column, the headline "Juror Eliminated and End of Crisis Alleged by Prosecuting Attorney," where it reads that "thus, Judge Miranda put an end to one of the most serious incidents occurred in many years in the Superior Court during the hearing of a trial for murder." The 1964 April 10 and 11 editions of El Mundo displayed on its .front page: "Prosecuting Attorney Requests Substitution of Two Jurors by Alternates" and "Judge Substitutes for Alternate Juror Who Commented the Proceeding" where it says that the action establishes a precedent in the criminal proceedings in Puerto Rico, and that it was the first time in the judicial history of Puerto Rico that a prosecuting attorney requested the judge to substitute two jurors when the trial was about to end. The newspaper accounts gave details of the discussions in court in the absence of the jury.

In *Gori* v. *United States*, 367 U.S. 364 (1961), a case in which both the Court of Appeals (2d Cir. 1960), 282 F.2d 43, and the Supreme Court doubted the necessity and wisdom of the judge's action in discharging a jury and in spite of that they sustained the validity of a second trial, it was said:

"Since 1824 it has been settled law in this Court that 'The double-jeopardy provision of the Fifth Amendment . . . does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment.' [Citations] Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection and he may be retried consistently with the Fifth Amendment. [Citations] It is also clear that 'This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served . . . ,' [Citations] and that we have consistently declined to scrutinize with sharp surveillance the exercise of that discretion. [Citations] In the *Pérez* case, the authoritative starting point of our law in this field, Mr. Justice Story, for a unanimous Court, thus stated the principles which have since guided the federal courts in their application of the concept of double jeopardy to situations giving rise to mistrials:

'. . . We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with

any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office. . . .' 9 Wheat., at 580."

See the exposition of the doctrine in different situations of fact in other recent decisions: *United States* v. *Tateo,* 377 U.S. 463; *Downum* v. *United States, supra; Green* v. *United States,* 355 U.S. 184; *Brock* v. *North Carolina,* 344 U.S. 424; *Bryan* v. *United States,* 338 U.S. 552; *Wade* v. *Hunter,* 336 U.S. 684; *United States* v. *DiFronzo,* 345 F.2d 383 (7th Cir.), *cert. denied,* 382 U.S. 829; *Killilea* v. *United States,* 287 F.2d 212 (1st Cir.), an illustrative exposition of Judge Aldrich; *cert. denied,* 366 U.S. 969; *Crawford* v. *United States,* 285 F.2d 661 (C.A.D.C.); *Scott* v. *United States,* 202 F.2d 354 (C.A.D.C.), *cert. denied,* 344 U.S. 879; *State* v. *Puckett,* 377 P.2d 779 (Ariz.), where the judge presiding the trial without a jury declared a mistrial because of a newspaper article which implied that the decision might be influenced by party affiliation; *State* v. *Romeo,* 203 A.2d 23 (N.J.); *Commonwealth* v. *Maroney,* 230 F.Supp. 391 (U.S.D.C.—W.D. Pa.), *aff'd,* 348 F.2d 22 (3d Cir.). See *People* v. *Arteaga Torres, supra.*

In *Downum,* a case in which the existence of double jeopardy was upheld and the second trial annulled, the court stated at pp. 735–36:

"From *United States* v. *Pérez,* 9 Wheat. 579, decided in 1824, to *Gori* v. *United States,* 367 U.S. 364, decided in 1961, it has been agreed that there are occasions when a second trial may be had although the jury impaneled for the first trial was discharged without reaching a verdict and without the defendant's consent. The classic example is a mistrial because the jury is unable to agree. [Citations] . . . Discovery by the judge during a trial that a member or members of the jury were biased *pro* or *con* one side has been held to warrant the dis-

charge of the jury and direction of new trial. [Citations] At times the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him may be subordinated to the public interest—when there is an imperious necessity to do so. [Citation] Differences have arisen as to the application of the principle. [Citations] Harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict are examples when jeopardy attaches. [Citation] But those extreme cases do not mark the limits of the guarantee. The discretion to discharge the jury before it has reached a verdict is to be exercised 'only in very extraordinary and striking circumstances,' to use the words of Mr. Justice Story in *United States* v. *Coolidge,* 25 Fed. Cas. 622, 623."

Ordinarily, the decisions do not present conflict regarding the general rules mentioned. The differences are noted when the general rule is applied to specific situations of fact. As the problem in this case revolves around the use of a sound judicial discretion, the exercise of said discretion is judged in the doctrine mentioned with a sense of greater strictness and restriction at times, and at other times with more laxity and liberality. Even when dealing with a right protected by the Federal Constitution fundamentally, the decision of the state courts reveal, generally speaking, greater strictness in the judgment of the judge's discretion and a more severe scrutiny, on appeal, of its exercise according to the concepts enunciated, than it is shown in the decisions of the Supreme Court up to the most recent pronouncements for guides of the federal courts.[4]

---

[4] It would be an endless task to compare all the situations of fact involved. For more illustrative examples of the greatest strictness presented by the state cases against mistrials and in the evaluation of the judge's discretion in the light of the concept of the overt and imperious necessity to do it and the clear and evident reason: *Paulson* v. *Superior Court, etc.,* 372 P.2d 641 (Cal.) ; *Jones* v. *State,* 320 S.W.2d 645 (Ark.) ; *State* v. *Preto,* 144 A.2d 19 (N.J.) ; *State* v. *Connors,* 371 P.2d 541 (Wash.) ; *State* v. *Crocker,* 80 S.E.2d 243 (N.C.) ; *Baker* v. *Commonwealth,* 132 S.W.2d 766 (Ky.) ; *Cárdenas* v. *Superior Court,* 363 P.2d 889, where the Superior Court of

■ Irrespective of the fact that, subject to more demanding criteria in the doctrine and to other acceptable attitudes in the evaluation and weight of the circumstances present herein, the possibility could exist of having approached the situation in a different manner and having continued the proceeding by offering other remedies and observing other guarantees and precautions as the defense suggests and argues; that perhaps the court could have prevented the jury, once the incident occurred, from learning the details, and that even acting in first instance we could have had another criterion about the general situation, or taken other measures for the protection of the parties without declaring a mistrial of the case which was already in its final stage, we are convinced by the record before us that the presiding judge did not lack rational basis in the facts to exercise its discretion by discharging the whole jury finally and declaring a mistrial, in his honest belief and conviction as judge, that in that way the ends of justice would be better served and he would protect better the rights of the parties.

■ Taking the situation and the atmosphere created as a whole and apart from the fact of how it could have been handled, it cannot be said that the judge's determination was just merely a whimsical, groundless action, or that it responded to a different motivation than that of safeguarding the integrity of the trial and insuring a fair judgment on its day. Since there does exist a rational basis in the record for his action, the difference of opinion which in any event could exist between his judgment and ours in review, would be a difference only of degree in the weighing of the factors mentioned and, in deference to his position of keen observer of the incidents which took place and their effect on the trial, we should not substitute his judgment.

California (In Bank) refused to follow *Gori* v. *United States*, 367 U.S. 364, because the decision was not in accord with the interpretation given by California to the Double-Jeopardy Clause of its state Constitution.

As it has been said in decisions cited, there cannot be strict formulas in these cases and it is impossible to anticipate all the circumstances which would justify or not an intervention of the judge to declare a mistrial. It is not necessary for us to commit ourselves a priori to a particular position in the doctrine for the solution of these situations. Without disregarding the guiding principles of law which should prevail, the proper standard of action to be followed is that which in the light of the attending facts and circumstances in each case, keeps and protects better the values of criminal justice to which we referred at the beginning when placed on the scale. The foregoing disposes of the second error assigned.

█ Agreeing with the expressions of the presiding judge, that it is necessary to maintain very highly the integrity of the jury, it is convenient to add to his final words of advice that it may be injurious to a climate of wholesomeness and rectitude of the trial that the jury be placed under the vigilance of police informers at the private service of any of the parties in the case and for their benefit. The only intervention with the jury should be that which pursuant to law is prescribed by the court. Even if it is meant to exercise greater zeal in the discharge of their duty, such practices should not be ignored or allowed by trial judges.

The order appealed from must be sustained. The writ of certiorari issued is hereby quashed, and the record will be remanded to the trial court to hear the cause on its merits.

Mr. Chief Justice Negrón Fernández dissented.