204 So.2d 534 (1967)
Gonzalo R. REYES, Petitioner,
v.
Honorable Richard KELLY, As Judge of the Circuit Court of the Sixth Judicial Circuit in and for Pasco County, Florida, Respondent.
No. 67-175.
District Court of Appeal of Florida. Second District.
November 29, 1967.
Rehearing Denied December 29, 1967.
*535 George C. Dayton, Dade City, for petitioner.
Earl Faircloth, Atty. Gen., Tallahassee, and Robert R. Crittenden, Asst. Atty. Gen., Lakeland, for respondent.
PIERCE, Judge.
This is an original prohibition proceeding, wherein, upon suggestion filed here, we issued Rule Nisi, in response to which respondent Judge filed his return, and the matter is now before this Court for final disposition after adversary briefs filed and oral argument had.
The background of this case is brief and wholly without precedent. Petitioner Reyes, hereinafter called defendant, was first arrested upon a warrant charging murder in the first degree for the killing of one Hattie Lee Randall. With the advice of counsel, defendant agreed to plead guilty to murder in the second degree, and the State Attorney was agreeable to such plea. A direct information for murder in the second degree was accordingly filed by the State Attorney. Defendant was arraigned thereon in open Court, attended by his counsel, and thereupon entered a plea of guilty thereto. The trial Judge, Honorable Richard Kelly, then questioned defendant closely as to whether the plea was being entered freely and voluntarily, with full knowledge of the consequences and without promises, threats or duress. Being satisfied after such questioning that the plea was in fact free and voluntary and not infected with any of the aforesaid vices, Judge Kelly then proceeded to interrogate defendant concerning the details of the offense set forth in the information. After extended colloquy the Court concluded that the plea of guilty to the information should not be accepted by the Court 
"* * * because it seems that according to his story that he was acting in self-defense, that he didn't aim the gun at this woman to kill her, that he was doing the shooting  he was doing it for the purpose of frightening her, or because he was nervous, because he felt that she was endangering his presence with the knife, and he is  his plea places him subject to a life sentence."
It was explained to the Court by defendant's counsel that since two of the shots went into decedent's back it was doubtful if self-defense would be available. But over objection of defense counsel the Court insisted that it would not accept a plea of guilty, but would enter a plea of not guilty for the defendant, even though it might be "tactically to the best advantage" of defendant for him to plead guilty. At no time did defendant seek to withdraw his plea of guilty.
On January 6, 1967, the State Attorney filed a written nolle prosequi of the second degree murder information and on the same day procured from the grand jury an indictment for murder in the first degree against defendant. On January 26, 1967, defendant, pursuant to F.S. Sec. 909.01 et seq. F.S.A., raised the defense of double jeopardy by motion to quash the indictment, which motion was denied by the Court. It was stipulated that the defendant in the two cases was the same person and that the offense of second degree murder in the direct information was embraced in the indictment for murder in the first degree. The defendant *536 contends that he was in jeopardy when he entered his voluntary plea of guilty to the information for murder in the second degree, that the Court was without authority to reject his guilty plea, and that to try him now on the indictment for first degree murder would be placing him in second jeopardy for the same offense.
Sec. 12 of the Declaration of Rights, Florida Constitution, F.S.A., provides inter alia as follows:
"No person shall be subject to be twice put in jeopardy for the same offense, * * *".
The basic philosophy underlying the organic protection from double jeopardy has been eloquently expounded by the late Justice Mathews in Bizzell v. State, Fla. 1954, 71 So.2d 735:
"The right to be placed in jeopardy only once for the same offense is guaranteed to every citizen. It is not for the purpose of protecting criminals, but is to protect the citizens against the once-existing power of the State, or the sovereign, to continue prosecutions and trials of the same person for the same offense until a conviction is obtained, or the defendant is ruined by the time, expenses and annoyance of such successive prosecutions. This constitutional right stands upon the same basis as those other constitutional rights to be tried by a fair and impartial jury, to demand the nature of and cause of the accusation against him, to meet the witness against him face to face, and to be furnished a copy of the indictment against him. Section 11, Declaration of Rights. These rights curtail and restrain the power of the State. It is more important to preserve them, even though at times a guilty man may go free, than it is to obtain a conviction by ignoring or violating them. The end does not justify the means. Might is not always right. Under our system of constitutional government, the State should not set the example of violating fundamental rights guaranteed by the Constitution to all citizens in order to obtain a conviction."
In this proceeding defendant is applying for a rule absolute in prohibition which would have the effect of precluding all further action in the Circuit Court. He invokes one of the forms of double jeopardy, namely, autrefois acquit, contending in support thereof that the Circuit Court proceedings operated to legally acquit him of unlawful homicide, not only second degree murder but also the first degree murder charge contained in the indictment.
This reasoning of defendant runs like this: that he had a legal right to plead guilty to the second degree murder information; that upon such plea being entered he was thereupon placed "in jeopardy" and the Court had no duty to perform other than to pronounce judgment and sentence for second degree murder; that the nolle prosequi, or dismissal, of the second degree murder information by the State Attorney, without the consent or acquiescence of defendant, had the legal effect of an acquittal; and that the acquittal of a lesser degree of homicide constituted former jeopardy, not only of that degree but of a higher degree, as to that particular homicide.
Most of these contentions are sound. Thus, defendant had a legal right to plead guilty to the information for second degree murder if he so desired, and if agreeable to the State. Canada v. State, 1940, 144 Fla. 633, 198 So. 220; Pope v. State, 1908, 56 Fla. 81, 47 So. 487, 16 Ann.Cas. 972; Eckles v. State, 1938, 132 Fla. 526, 180 So. 764.
Also, a conviction or acquittal of a lesser offense would bar a subsequent prosecution for a greater offense in all those cases where the lesser offense is included in the greater. Southworth v. State, 1929, 98 Fla. 1184, 125 So. 345; Sanford v. State, 1918, 75 Fla. 393, 78 So. 340; Greene v. City of Gulfport, Fla. 1958, 103 So.2d 115; State v. Fegre, 1945, 156 Fla. 149, 23 So.2d 270; *537 Deeb v. State, 1938, 131 Fla. 362, 179 So. 894.
And if the defense of double jeopardy was legally available to defendant, prohibition in this Court would be an appropriate remedy. State ex rel. Alcala v. Grayson, 1945, 156 Fla. 435, 23 So.2d 484; State ex rel. Manning v. Himes, 1943, 153 Fla. 711, 15 So.2d 613; State ex rel. James v. Williams, Fla.App. 1964, 164 So.2d 873.
But the foregoing postulates are predicated upon one fundamental premise, lacking here, namely, that the accused was "in jeopardy" in the Constitutional sense, when he merely pleaded guilty. A judgment or its equivalent is indispensable, and that is true whether the original plea is guilty or not guilty, and whether the judgment is conviction or acquittal.
Where the plea is not guilty, a jury is sworn to try the issues, and that jury must thereafter find and return a verdict. If the verdict is one of guilt, it is followed by a judgment of guilt by the Court and the sentence of the defendant. If the verdict is not guilty, the judgment is one of acquittal and the defendant is discharged. But in either event, such judgment or its equivalent is essential to provide the legal basis of former jeopardy.
We use the words "or its equivalent" advisedly and with good reason. There are numerous instances when a criminal trial before a jury will terminate prior to, or without, verdict. In such instance, where the jury is discharged for a legally sufficient reason such as "(a) the illness of the Judge, the accused, or a juror requiring the absence of any of them from the court, or (b) the inability of the jury to agree on a verdict after due and proper deliberation, or (c) the consent of the accused himself", there is no jeopardy, or if technical jeopardy attached by the previous swearing of the jury it becomes extinquished, insofar as it precludes a subsequent trial. State ex rel. Williams v. Grayson, Fla. 1956, 90 So.2d 710, 63 A.L.R. 2d 777.
In those instances, however, where a previously impanelled and sworn jury is discharged before verdict for any reason not legally sufficient and without an absolute necessity and without the defendant's consent, such discharge is equivalent to an acquittal and precludes a subsequent trial for the same offense. (Emphasis supplied). State ex rel. Williams v. Grayson, supra. See also Raines v. State, Fla. 1953, 65 So.2d 558; Allen v. State, 1906, 52 Fla. 1, 41 So. 593; State ex rel. Dato v. Himes, 1938, 134 Fla. 675, 184 So. 244; State ex rel. Alcala v. Grayson, supra.
By analogous reasoning, the same holds true in cases of a guilty plea. Defendant contends that when he pleaded guilty jeopardy immediately attached and the Court had no function thereafter to perform except to impose sentence. But the fallacy of this reasoning is that, while jeopardy may have technically "attached", such as when the jury is sworn in a not guilty case, it was not such jeopardy as would ipso facto erect an impenetrable barrier of former jeopardy against another prosecution for the same or even higher offense, just because of the guilty plea itself. There must be something more than just a plea. There must be an "acceptance" by the Court.
The applicable statutes, while not expressly requiring such "acceptance" in so many words, clearly contemplates as much. Secs. 909.08, 909.09, 909.11, and 909.12, F.S., all dealing with guilty pleas under varying circumstances, use the phrases "shall not be accepted", "with the consent of the court", "before accepting the plea", and "if the court accepts the plea", respectively. These Statutes harmonize only with the irresistible conclusion that a plea of guilty in a criminal case, to be effectual, must be "accepted" by the Court.
*538 The appellate decisions of Florida support this view. The Supreme Court in the companion cases of Lee v. State and Pitts v. State, Fla. 1964, 166 So.2d 131, used the language "when a judge accepts a [guilty] plea to an indictment". The 1st District Court in Zuniga v. State, Fla.App. 1966, 184 So.2d 659, used the language "when a competent plea of guilty is entered and accepted".
And like most other requisites in the field of law, this "acceptance" may be either express or necessarily implied. Thus, when a Court upon a plea of guilty proceeds to simply impose sentence, the "acceptance" of such plea by the Court is automatically implied. Lee v. State, Fla.App. 1965, 172 So.2d 621.
Summing up, the entry of a plea of guilty, or the swearing of a jury in a not guilty case while it may have been loosely referred to from time immemorial as "putting the accused in jeopardy" does not alone activate the Constitutional guaranty of protection against double jeopardy. That barrier can only be invoked when such plea, whether of guilty or not guilty, is followed by some judicial labor which, either expressly or impliedly, recognizes or acts upon such plea in the judicial sense.
In United States v. Scarlata, 214 F.2d 807, the 3rd U.S. Court of Appeals had before it (text 214 F.2d 808) "but one question: Is a plea of guilty in a state court, without more, a `judgment of conviction' * * * thus barring a later federal prosecution for the same acts?" Scarlata had pleaded guilty in the State Court to an indictment for burglary and receiving stolen goods, and had also pleaded guilty to a Federal indictment charging him with the theft of interstate shipment of goods, all based upon the same transaction. He was not adjudged guilty in the State Court, but was adjudged guilty by the Federal Court and sentenced to a term of imprisonment. He contended "that his plea of guilty to the state indictment barred his later conviction in federal court."
This contention was rejected by the Federal Court of Appeals. We like the language of Circuit Judge Staley:
"It may well be that a plea of guilty is a conviction in the same sense in which a jury verdict is a conviction. See Kercheval v. United States, 1927, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009; United States v. Fox, 3 Cir., 130 F.2d 56, 58, certiorari denied, 1942, 317 U.S. 666, 63 S.Ct. 74, 87 L.Ed. 535. But a plea of guilty is not a judgment of conviction. Indeed, the very word `judgment' indicates action by the court. A judgment of conviction by the court must follow a plea of guilty just as a judgment of conviction must follow a jury verdict of guilty. A defendant can plead guilty and a jury can render a verdict of guilty, but only the court can adjudge one guilty. In short, something more than a plea of guilty  some action by the court  is necessary before there can be a judgment of conviction." (Italics in text).
F.S. Sec. 909.12 F.S.A., is directly in line with our view that a guilty plea must be vitalized by Court acceptance, and seems to cover the situation perfectly, as follows:
"Where the defendant pleads guilty to an indictment or information, if the court accepts the plea and has discretion as to the punishment for the offense, it may hear witnesses to determine what punishment shall be imposed." (Emphasis supplied).
Defendant cites the case of Kercheval v. U.S., 1927, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009, for the proposition that a guilty plea alone is conclusive, but that case is not authority because there the Court had actually "accepted" the plea. Kepner v. U.S., 1904, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114, is also cited, but in that case the accused had been previously tried and acquitted on the merits. The case of Riadon v. U.S., 6 Cir., 274 F.2d 304, is relied upon, but there again the plea of guilty had *539 been "accepted" by the Court. State Court decisions from other jurisdictions are likewise cited, but they are all, for like reasons, distinguishable.
In the case sub judice, the question hinged upon the authority of the trial Court to either accept the plea or refuse to accept it. And while we might have ruled differently and accepted the plea of guilty, we cannot deny to the trial Judge the right to rule as he did, so long as it was within his discretionary power so to do.
Accordingly the absolute rule in prohibition is denied, the Rule Nisi is quashed, and the proceeding here dismissed.
SHANNON, Acting C.J., and HOBSON, J., concur.