224 So.2d 303 (1969)
Gonzalo R. REYES, Appellant,
v.
Honorable Richard KELLY, As Judge of the Circuit Court of the Sixth Judicial Circuit in and for Pasco County, Florida, Appellee.
No. 37021.
Supreme Court of Florida.
June 11, 1969.
Rehearing Denied July 25, 1969.
*304 George C. Dayton, Dade City, for appellant.
Earl Faircloth, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for appellee.

ON REHEARING
DREW, Justice.
This appeal is from a decision of the District Court of Appeal, Second District, in an original prohibition proceeding. It is clear that the decision is one initially construing a controlling section of the Florida Constitution,[1] hence jurisdiction of this appeal is vested in this Court.[2]
The facts, as hereafter supplemented to emphasize the voluntary and conclusive nature of the plea of guilty, are fully set forth in the District Court opinion denying prohibition on the ground that former jeopardy was not shown by a plea of guilty to a former charge on direct indictment for murder in the second degree. It is clear from that opinion that the District Court found the unqualified plea of guilty to have been made freely and voluntarily by the defendant, that he was competent to know the consequences of such plea, and that the same was not induced by fear, misapprehension, persuasion, promise, inadvertence or ignorance.[3] The record convinces us, as it did the District Court, that the able trial judge entertained no doubts about the conclusions above stated but based his refusal to accept such plea upon his belief, after an extensive and exhaustive examination of the defendant concerning the events out of which the homicide arose, that the defendant may have been acting in self-defense.
The record is conclusive that the defendant knew the court's belief in the matter and of the court's decision not to accept such plea solely because of his belief that the defendant may have acted in self-defense. Because the defendant was unable to speak and understand the English language, he was examined through two interpreters. After the court had concluded that it would not accept the plea of guilty for the reasons quoted in the opinion of the District Court of Appeal and emphasized here, the interpreter inquired of the court: "I wonder if we should relay this to him, whether the court has questioned whether to accept his plea of guilty." The court replied: "Let me do that. Tell him that this court is of the opinion that it cannot accept a plea of guilty from him because what he has described is a shooting in self defense." Thereupon the interpreter spoke in Spanish to the defendant, then replied to the court: "He understands that." The court then inquired "What did he say?" The interpreter answered: "He asked me: `What do you think about that?'" The court then replied: "All right. Now, give him this further explanation: that if he took this  if he became angry and took up this pistol and killed this woman, this is one thing, but if he was afraid she was going to harm him with a knife and he was trying to taunt her off, or scare her off, or to defend himself, this is another thing, and if he was defending himself, the law provides that he is not guilty, if those are the facts when everything is considered, but if he, in fact, took up this gun and killed this woman because he was angry at her and he pleads guilty to Second Degree Murder, he can go to the State Penitentiary for the rest of his natural life, never to come out of jail again. Is that too much to explain?" The interpreter then spoke to the defendant and told the court: "No, that is all right  he said he understands what you said, but he did that because he thought that she was coming to him to kill him with the knife." Father Samuel, the other interpreter, then stated to the court: "You expressed the opinion that he should probably *305 have a jury determine if he is guilty, or not. I wonder if he should know that you have this opinion." The court then stated: "I would think it couldn't do anything but be constructive for him to know. So, would you explain that to him, that he is entitled, as a matter of constitutional right, to a trial by Jury, and the Jury would listen to the facts that he would present and the facts that the State would present and they would decide whether he was guilty, or not, and he would be entitled at that time to contend that he shot her in self-defense. This would be a part of his defense." The interpreter then said after inquiry to the defendant, "He understands that very well," whereupon the court again told the interpreter, "Now, ask him does he want to have this trial by Jury, or does he want to plead guilty." The interpreter made such inquiry and then related to the court: "He said that he pleads guilty right now." (Emphasis added to the above two quotations.)
A trial court has the undoubted power to reject a plea of guilty where the same is not "entirely voluntary by one competent to know the consequence," or is "induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance,"[4] and the trial court is allowed great latitude with respect to making this determination. The law is equally clear that where a plea of guilty possessing the attributes above mentioned is accepted by the court, the court may refuse to permit such plea to be withdrawn for the purpose of pleading not guilty.[5] Such discretion, of course, is subject to review by an appellate court but this court many years ago said:[6]
But, when, as in this case, a defendant deliberately pleads guilty to a criminal charge under circumstances that should reasonably have prompted him and his counsel to be prepared to meet the charge, and no motion is made for leave to withdraw the plea of guilty till after the state witnesses have been discharged, and there is no direct allegation or proof that the plea was entered under mental weakness, mistake, surprise, misapprehension, fear, promise, or other circumstances that put the defendant at a disadvantage in protecting his rights, the discretion of the trial court is not shown to have been abused [in rejecting such request].
It is, therefore, abundantly clear from the disclosures of this record, construed in the light of the decisions holding that "[i]n a criminal prosecution a defendant has a right to plead guilty; and [that] the effect of such a plea is to authorize the imposition of the sentence prescribed by law,"[7] that the acceptance of such a plea by the court places the defendant in jeopardy. The major question then, is whether there was an acceptance of the plea by the trial judge.
The District Court in its opinion we think correctly summed up the situation when it said: "[T]hat barrier [former jeopardy] can only be invoked when such plea, whether of guilty or not guilty, is followed by some judicial labor which, either expressly or impliedly, recognizes or acts upon such plea in the judicial sense"[8] (emphasis added). When the trial court determined  as it unquestionably did from its examination of the defendant, counsel for the defendant and the state's attorney  that this plea of guilty met all judicial requirements as hereinabove discussed, and then proceeded to question the defendant concerning the events out of which the homicide arose, such subsequent examination was the equivalent of a judicial acceptance of the guilty plea and was authorized only for the purpose of determining the nature *306 and extent of the judgment and sentence to be imposed.
This brings us to the question of the power of the state's attorney to enter a written nolle prosequi of the second degree murder information and to present the matter anew to the grand jury to seek and secure an indictment for murder in the first degree against the defendant.[9] Under such circumstances, the defendant having been clearly placed in jeopardy by the proceedings consequent upon his voluntary plea of guilty, the subsequent acts of the state's attorney in entering the nolle prosequi and the acts of the grand jury in returning an indictment for first degree murder for the same crime on which jeopardy had attached to the defendant constitute a brutum fulmen and are wholly without standing. Although the problem is apparently without direct precedent, we think that the plea of guilty in this situation is correctly accorded the effect of a jury verdict,[10] that the cause as in the course of trial must be in control of the court, and that the attempt by the state's attorney to terminate the proceedings is under the particular circumstances ineffective.
We take note of Rule 1.170, Florida Rules of Criminal Procedure, 33 F.S.A., adopted subsequent to the trial here, which provides "a defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept the plea of guilty or nolo contendere and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge." For the benefit of the bench and bar of this state in future trials, we construe this rule adopted by this Court pursuant to constitutional authority[11] to permit the trial court to refuse to accept an unqualified plea of guilty only where it does not meet the requirements of law heretofore set forth. Such rule does not authorize a trial court to arbitrarily refuse to accept an unqualified plea of guilty made by a defendant in a non-capital case for any other reason.
There is no more reason to allow such action by a trial judge than there is to allow the defendant to withdraw such a plea at his pleasure. If a trial judge has the discretion to refuse only for cause permission to withdraw a plea of guilty, he should not be allowed, without cause, to reject such a plea. The right to enter such a guilty plea to a non-capital offense should be no less sacred than the right to enter a plea of not guilty.
The decision of the District Court, to the extent that it conflicts with the views herein expressed, is quashed and the cause is remanded to that court with directions to issue its rule absolute in prohibition against the prosecution of the defendant under the indictment for murder in the first degree. This disposition of the cause is not to be construed as discharging the defendant from custody under the information for murder in the second degree to which jeopardy has attached, nor to affect in any way the validity of his unqualified plea of guilty. Jurisdiction in that case, so far as reflected by the record before us, is still vested in the trial court for the purpose of entering an appropriate judgment and sentence and such further orders as may be appropriate and lawful.
It is so ordered.
ERVIN, C.J., ROBERTS, CARLTON, ADKINS and BOYD, JJ., and MASON, Circuit Judge, concur.
NOTES
[1] Fla. Const., Decl. of Rights, § 12 (1885, as amended), F.S.A.
[2] Fla. Const., art. V, § 4 (1885, as amended), F.S.A.
[3] Reyes v. Kelly, 204 So.2d 534 (2d Dist. Ct.App.Fla. 1967).
[4] Brown v. State, 92 Fla. 592, 109 So. 627 (1926).
[5] Pope v. State, 56 Fla. 81, 47 So. 487 (1908).
[6] Id. at 85, 47 So. at 488, 489.
[7] Id. at 84, 47 So. at 488; Caston v. State, 58 So.2d 694 (Fla. 1952).
[8] Reyes v. Kelly, 204 So.2d 534, 538 (2d Dist.Ct.App.Fla. 1967).
[9] Respondent in argument concedes the impropriety of using, in a second prosecution, evidence obtained by the court's inquisition in the initial proceeding.
[10] Cf. Potter v. State, 91 Fla. 938, 109 So. 91 (1926); A. Abbott, Criminal Trial Practice, § 91 (4th ed. 1939); 22A C.J.S. Criminal Law § 457(1961).
[11] Fla. Const., art. V, § 3 (1885, as amended).