356 So.2d 817 (1978)
STATE ex rel. William M.C. WILHOIT, Relator,
v.
Clyde B. WELLS, As Judge of the Circuit Court of the First Judicial Circuit, State of Florida, Respondent.
No. II-91.
District Court of Appeal of Florida, First District.
February 20, 1978.
As Corrected March 6, 1978.
*819 Joe J. Harrell and W.H.F. Wiltshire of Harrell, Wiltshire, Stone & Swearingen, Pensacola, and Hugh M. Taylor, Tallahassee, for relator.
No appearance for respondent.
Robert L. Shevin, Atty. Gen., and Charles W. Musgrove, Asst. Atty. Gen., Tallahassee, for State of Florida, real party respondent in interest.
SMITH, Judge.
Wilhoit's suggestion for writ of prohibition urges that the trial court in this criminal case committed jurisdictional error (1) by rejecting Wilhoit's nolo contendere pleas, which the court previously accepted, and by reinstating Wilhoit's not guilty pleas without his consent and putting him to trial and so twice in jeopardy; (2) by failing to perform the court's agreement which induced Wilhoit's nolo contendere pleas, to the effect that adjudication of guilt would be withheld on three counts and probation would be granted on all four; and (3) by failing to grant Wilhoit a speedy trial as prescribed by Fla.R.Crim.P. 3.191. Our rule nisi prevented a December 1977 trial on these four charges, Fla.R.App.P. 4.5 d. We declined to issue a rule in respect to a fifth charge.
Two informations charge that Wilhoit, a Pensacola physician, sexually assaulted four women who were his patients and who were anesthetized or otherwise physically helpless; and that he later swore falsely to a grand jury that he had not had sexual intercourse with one of them. Three counts in the circuit court's case 77-1427 charged involuntary sexual battery, as did count one in case 77-1428; count two in number 77-1428 charged perjury. Wilhoit was taken into custody March 14, 1977 on an indictment which became number 77-1428 and so was entitled to trial on or before September 12, absent preventing circumstances; and he was taken into custody March 24, 1977 on an indictment which became 77-1427, and was entitled to trial on or before September 22, unless Rule 3.191 intervened.
The sexual battery charges were severed from the perjury charge and consolidated with each other for trial beginning September 6, 1977, within the 180-day period for speedy trial prescribed by Rule 3.191. No definite trial date was set for the perjury charge. On September 2, 1977, Friday before the Labor Day weekend preceding the trial scheduled on Tuesday, the 6th, the prosecutor, defense counsel, and the trial judge met and discussed disposing of all the charges on pleas of nolo contendere. The colloquy leading to an apparent agreement was reported and is set forth in an appendix to this opinion. In substance, the agreement was derived as follows: The prosecutor reported having consulted the complaining witnesses, Wilhoit's patients, who were said to have no objection to probationary sentences on the sexual battery counts. The prosecutor urged imprisonment on the perjury count; but in consideration of Wilhoit's loss of standing in the community, and his almost certain loss of his medical license, and the acquiescence of *820 the complaining witnesses, the prosecutor did not oppose withheld adjudication and probationary sentences on the sexual battery counts. The court stated that it would grant probation on all counts, withhold adjudication on the sexual battery counts, and consider the transcripts of Wilhoit's grand jury testimony and other presentence submissions in determining whether to adjudicate Wilhoit guilty of perjury. On that note the court agreed to excuse the venire and witnesses scheduled to appear on September 6 and at that time to receive the nolo contendere pleas so conditioned.
On the morning of September 6, before the scheduled proceedings in open court, the alleged victim mentioned in count one of case 77-1428 objected to the prosecutor that she "wanted the defendant to make an open court admission that he committed this sexual battery." As a result, the anticipated nolo contendere plea was not entered, and the court stated that charge "will be set for trial necessarily at a later date because we excused the jury for this day." Concerning the other counts of sexual battery and perjury, the prosecutor announced his understanding that pleas of nolo contendere would be entered and that, none of the victims having objected to a probationary sentence, the court would withhold adjudication on those counts and place Wilhoit on probation. The prosecutor recommended that Wilhoit be imprisoned for perjury but stated he understood that "the court is inclined to place the defendant on probation on that count also but will at a later date determine ... whether he will be adjudicated guilty on that count."
Rule 3.172, Fla.R.Crim.P., requires that the trial court, before accepting a nolo contendere plea, must determine "that the plea is voluntarily entered and that there is a factual basis for it" and must address the defendant personally to determine that he understands the consequences of his plea and "[t]he complete terms of any plea agreement, including specifically all obligations the defendant will incur as a result." Rule 3.172(a), (c)(vii). The rule further provides:
(f) No plea offer or negotiation is binding until it is accepted by the trial judge formally after making all the inquiries, advisements and determinations required by this Rule. Until that time, it may be withdrawn by either party without any necessary justification.
Inquiry satisfying Rule 3.172 was made of Wilhoit, who confirmed his understanding that adjudication of guilt would be withheld on the three sexual battery counts, that he "could be adjudicated on the perjury count," and that on all those counts he would be placed on probation. The prosecutor recited the evidentiary details of the state's case, to the effect that each of the alleged victims were administered "some type of shot" or "a gaseous substance in the treatment room," and woke up "in the defendant's office when he was having sexual intercourse with her." The court inquired whether Wilhoit wished to "contest any of the facts" recited, and his counsel interjected that he would "present this information and any counter-position we have" in a written submission. The court then stated:
[T]he court is going to at this time determine that the plea has been freely and voluntarily entered, subject only to the agreement as has been stated by [the prosecutor] and that the defendant is intelligent and alert sufficient to understand the consequences of that plea and I'm going to accept the pleas of nolo contendere at this time on the three sexual battery counts and the perjury count. At this time I'm going to withhold adjudication of guilt on all of the counts to which the defendant has tendered a plea and I'm going to order a presentence investigation and ... the transcript of all the testimony ... and also ... the state and the defense will submit a narrative report of their expert witnesses' testimony and the court will also consider that in determining the acceptance of his plea also the sentence to be imposed.
Then, this colloquy:
DEFENSE: Your Honor, may I summarize that so that I make sure I have got *821 it. There will be a withheld adjudication of guilt [on the sexual battery charges in case 77-1427], and acceptance of the plea of nolo contendere on all charges [except the sexual battery charge in case 77-1428, continued for trial].
COURT: At this time.
DEFENSE: At this time, yes, sir.
COURT: Right.
DEFENSE: And this will be probation, as well.
COURT: That's the understanding. The court would not be bound by that but then would give you an opportunity to withdraw your plea.
Immediately thereafter, in a reported hearing in chambers, the prosecutor expressed concern over the running of the speedy trial period on the remaining sexual battery count in case 77-1428. The prosecutor asked the court to extend the period for trial under Fla.R.Crim.P. 3.191(f) because the anticipated plea and disposition on that plea were prevented by the unanticipated and "exceptional circumstance" of a late objection by the complaining witness, the alleged victim. The court announced that exceptional circumstances did justify an extension of the time for trial. No written order was entered, nor was the time for trial extended for a certain period; but the court set the case for trial October 24, 1977.
Wilhoit later filed a motion for "specific performance" of the unfulfilled September 2 agreement for disposition of the sexual battery charge in case 77-1428, and for discharge on that count because no trial was had within 180 days. The court on October 6, 1977 denied those motions and reconfirmed the trial date of October 24, 1977, solely for the sexual battery count in case 77-1428. Wilhoit then moved to continue the October 24 trial, in part because Wilhoit wished to seek a writ of prohibition in this court. That motion was granted.
In the meantime, the agreement for disposition of the other counts on nolo contendere pleas also began to unravel. In the aftermath of the September 6 change of pleas in open court, of which photographs and stories were featured in the press, the other three complaining witnesses reflected on the events and told the prosecutor that they too objected to the agreed disposition of the cases. One signed an affidavit stating she had no objection to a probationary sentence of fifteen years, "but only if he pleads guilty and is adjudged guilty." Another's affidavit stated that Wilhoit should spend at least one year in jail for each victim and that she previously did not object to probation because "I thought he was going to admit his guilt." The third expressed the same view, adding that Wilhoit should go to prison for five years and never again practice medicine. The prosecutor filed those affidavits with a motion "to allow the defendant the opportunity to withdraw pleas of nolo contendere." That motion recounted all the antecedent circumstances, as understood by the prosecutor, and represented that the state "can no longer go along" with the court's previously intended disposition of the sexual battery cases.
On October 17, 1977, the court entered an order rejecting all previously tendered nolo contendere pleas, reinstating Wilhoit's not guilty pleas, and setting all cases for trial December 19, 1977. The order recited that "because of the nature of these charges and the positions taken by opposing counsel the ends of justice could best be served by submitting this case to a jury trial."
Before the scheduled December trial date, Wilhoit filed this suggestion for writ of prohibition. As stated at the outset, the issues are whether the trial court exceeded its jurisdiction by rejecting Wilhoit's nolo contendere pleas on October 17, 1977; or by refusing to perform the agreement for disposition of these cases; or by failing to provide a speedy trial.

The trial court lacked power to reject the nolo contendere pleas accepted September 6, 1977.
We are concerned first with whether the trial court had power to reject Wilhoit's nolo contendere pleas over his objection, as the court did on October 17, 1977. That issue controls the court's power to proceed *822 now to trial, for if the pleas were improperly rejected, a trial will place Wilhoit twice in jeopardy in violation of Article I, § 9, Florida Constitution.
On September 6, 1977, the trial court formally accepted Wilhoit's tendered nolo contendere pleas to three counts of sexual battery and one count of perjury. The court first satisfied the Rule 3.172(c) requirement for oral examination of the accused concerning the voluntariness of his plea and his understanding of the consequences. The court also determined that there was a factual basis for the plea, after hearing the evidentiary details of the state's case. Though there was no formal recital of it in open court, it is obvious from antecedent events that the court was satisfied, as the rule requires, that Wilhoit acknowledged the nolo contendere plea was in his best interest. Fla.R.Crim.P. 3.172(d). Then the court declared: "I'm going to accept the pleas of nolo contendere at this time on the three sexual battery counts and the perjury count."
Following those words of formal acceptance, there were other words of ambiguity, condition, or equivocation. The court stated it would consider the pre-sentence submissions in "determining the acceptance of his plea, also the sentence to be imposed," and the subsequent exchange with defense counsel, quoted above, may be interpreted as implying that the pleas would be considered acceptable and accepted "at this time" but perhaps not later. However, the ambiguous language may also be interpreted as reserving only the power to impose a different sentence than that agreed on  a matter also drawn into question here, but on different grounds  and we regard the court's words as intending only that effect. We will not presume that the trial court undertook to "accept" Wilhoit's nolo contendere plea for purposes of binding Wilhoit to it, yet sought to qualify the court's own responsibilities concerning that accepted plea.
Under former practice, conditional acceptance of a nolo contendere plea was improper if not impossible. See Annot., 152 A.L.R. 253, 269-70 (1944): "If the court accepts the plea, it must do it unqualifiedly. It cannot do so subject to the right to consider and determine the facts and any questions of law." Florida's present rules are more explicitly to the same effect. Acceptance of a nolo contendere plea is a matter wholly within the court's sole discretion, but when that discretion is exercised by formal pronouncement that the plea is accepted, as prescribed by Rule 3.172(f), it is binding on the state and on the defendant, who thereby is placed in jeopardy as surely as if he had pleaded guilty. See Peel v. State, 150 So.2d 281 (Fla. 2d DCA 1963), appeal dism., 168 So.2d 147 (Fla. 1964), cert. denied, 380 U.S. 986, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965).
In Reyes v. Kelly, 224 So.2d 303 (Fla. 1969), cert. denied, 397 U.S. 958, 90 S.Ct. 961, 25 L.Ed.2d 142 (1970), the Supreme Court held that acceptance of a tendered guilty plea places the accused in jeopardy and bars a subsequent trial after rejection of his plea, without legal cause. Reyes and this case are in some notable respects different; Reyes held the right to plead guilty is "no less sacred" than the right to plead not guilty, 224 So.2d at 306, which cannot be said of a nolo contendere plea; and, under prior practice, Reyes held the guilty plea was impliedly accepted by the court's examination into the facts of the case, whereas Rule 3.172(a) now requires that examination as a condition precedent to accepting a plea. The result here and in Reyes is the same: the trial court may reject a tendered guilty plea for cause and may reject a tendered nolo contendere plea without articulated cause, but the court cannot accept such a plea, thus binding the accused, and then reject the plea over the defendant's objection, either as a matter of discretion or on some ground insufficient for the rejection of a guilty plea that has been accepted. See also Ray v. State, 231 So.2d 813 (Fla. 1970); Troupe v. Rowe, 283 So.2d 857 (Fla. 1973); State ex rel. Gutierrez v. Baker, 276 So.2d 470 (Fla. 1973).
We note in passing the scant authority that a court has power to set aside a nolo *823 contendere plea, once accepted, on no evident ground but that the court has changed its mind. Stewart v. United States, 300 F. 769, 776 (8th Cir.1924); Annots., 152 A.L.R. 253, 273 (1944), 89 A.L.R.2d 540, 578 (1963). By that view a court's verbal acceptance of a plea is legally insignificant, as is its sentence, until something is done to execute the court's pronouncement to the detriment of the accused. That view is inconsistent with Florida's rule and court decisions recognizing that the court's pronouncements upon a plea have legal significance in themselves. Reyes, 224 So.2d at 305, Fla.R. Crim.P. 3.172(f). See also ABA Standards, The Function of the Trial Judge § 4.2 (1972) (Acceptance of pleas of guilty or nolo contendere); Flowers v. State, 351 So.2d 387 (Fla. 1st DCA 1977).
Here it is evident that on October 17, 1977, the trial court rejected Wilhoit's previously accepted nolo contendere pleas because the complaining witnesses changed their minds or found they misunderstood the consequences of the September 2 agreement concerning the acceptability of nolo contendere pleas. Whatever the effect those developments may have had on the court's sentencing plans, we hold, without laboring the point, that a change of mind by the court, or by the prosecutor, or by the complaining witnesses, or by all of them, is not legal cause to set aside a nolo contendere plea which previously was accepted. Wilhoit's pleas are therefore pending still and Wilhoit cannot again be placed in jeopardy, by trial or otherwise, while they are pending. The pleas are binding on Wilhoit, the prosecutor and the court unless they are withdrawn by Wilhoit, with consent of the court, or are set aside by the court for legal cause not here shown. See Reyes, 224 So.2d at 306.

The trial court is not bound by the September 2 agreement for withheld adjudication and probationary sentences
Wilhoit's pleas of nolo contendere on September 6 were unquestionably induced by his expectation that the court would withhold adjudication of guilt on the sexual battery counts and would grant probation on those counts and the perjury count. Wilhoit's expectation was based on the trial court's clear commitment, evidenced by the appended excerpts of the September 2 conference between the trial judge, the prosecutor, and defense counsel.
Citing Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and Gutierrez, supra, Wilhoit urges his entitlement to performance of the September 2 agreement for disposition of the charges to which he pleaded nolo contendere on September 6. Plainly, he is not entitled to that relief concerning the sexual battery count in case 77-1428, concerning which Wilhoit withheld his nolo contendere plea when the complaining witness objected to the proposed disposition of that case. Rule 3.172(f), above quoted, makes clear that the state may withdraw from an agreement for the disposition of a criminal case at any time until the negotiated plea is accepted by the trial judge. For that reason and others, we previously denied a rule nisi in prohibition in respect to the scheduled December 1977 trial on the sexual battery count in case 77-1428.
Santobello held that a prosecutor could not properly recommend imprisonment when the defendant's plea had been induced by an agreement that the prosecutor would make no recommendation. Guiterrez held that an accepted plea of nolo contendere could not be set aside, on recommendation of a prosecutor, after it had been entered with the agreement of another prosecutor. This case is different from Santobello and Gutierrez in important respects: here the inducement for Wilhoit's pleas was the court's agreement, not the prosecutor's; here a misunderstanding or change of heart by the complaining witnesses accounted for the dissolution of the plea agreement; here there does not appear to have been any fault or lack of diligence by the prosecutor.
The fundamental distinction that separates this case from Santobello and Gutierrez is that Wilhoit claims entitlement to a particular disposition on the merits: withheld adjudication and probation. We conceive *824 that Wilhoit's argument must fail for two reasons: First, there was a material change in a factor pertinent to the trial court's decision on the matter of adjudication and sentence, that of course being the revelation of objections by the complaining witnesses. See § 921.143, Florida Statutes (Supp. 1976). And second, the trial court's decisions in respect to sentencing functions are so uniquely judicial that they cannot be bargained away even by the trial judge. Until sentence is pronounced, the trial court maintains power to impose any sentence authorized by law; and, though the sentencing judge may be conscience-bound to perform his own prior agreements with counsel and the parties, the court is not in law bound to impose a sentence that once seemed, but no longer seems, just and appropriate. Where as here a nolo contendere or guilty plea is tendered in reliance on the court's expression of sentencing intentions, and the plea is accepted, the sentencing judge must grant the defendant a clear opportunity to withdraw the plea if the judge cannot in conscience impose the sentence indicated; but that is the limit of the trial court's obligation. Davis v. State, 308 So.2d 27 (Fla. 1975); State v. Adams, 342 So.2d 818 (Fla. 1977). See also ABA Standards, Pleas of Guilty § 3.3(b) (1968):
[The trial judge] may ... indicate to the prosecuting attorney and defense counsel whether he will concur in the proposed disposition if the information in the presentence report is consistent with the representations made to him. If the trial judge concurs, but later decides that the final disposition should not include the charge or sentence concessions contemplated by the plea agreement, he shall so advise the defendant and then call upon the defendant to either affirm or withdraw his plea of guilty or nolo contendere.

Speedy trial considerations
Wilhoit urges speedy trial considerations as alternative grounds for prohibition of a trial on the pending charges. As we have stated, Wilhoit's pleas of nolo contendere to three counts of sexual battery and one of perjury still stand, and the trial court is now bound to act on those pleas. If the trial court determines to withhold adjudication and to sentence Wilhoit in accordance with the September 2, 1977 discussion and agreement, the speedy trial issues disappear except in respect to count one of 77-1428. If the trial court determines not to act on Wilhoit's nolo contendere pleas in the manner previously contemplated, but intends rather to impose a more severe disposition, the court will grant Wilhoit an opportunity to withdraw his nolo contendere pleas and reinstate his not guilty plea. In that event, Wilhoit will have become available for trial on those charges for the first time since September 6, 1977; and the trial court will immediately set a date for trial within a reasonable time. Further consideration of the speedy trial issues is necessary only in respect to the sexual battery charge in case 77-1428.
On September 6, 1977, the trial court found that exceptional circumstances required extending the period for Wilhoit's trial on count one of case 77-1428. The September 6 trial has been postponed as a result of the negotiated plea agreement on September 2, and the alleged victim's objection on September 6 had intercepted the anticipated plea of nolo contendere. We have no hesitation in agreeing that those events presented exceptional circumstances justifying an extension of the time for trial.
The more difficult question is whether the trial court entered a recognizable order complying with Rule 3.191(f), which provides that "the court may order an extension of time or continuance where exceptional circumstances are shown to exist" and that "the court may set a new trial date within a reasonable time."
An order extending the speedy trial period due to exceptional circumstances must be entered before the speedy trial period has run. State ex rel. Smith v. Rudd, 347 So.2d 813 (Fla. 1st DCA 1977). Here there was no "order" in the sense of a contemporaneous written disposition bearing the style and number of the case and *825 the signature of the trial judge. Yet the trial court verbally ordered an extension in the presence of counsel and a court reporter on September 6, 1977, and a transcript was later prepared and filed. Rule 3.191 does not in terms require that an "order" be entered in any particular form. Obviously the preparation, execution, and filing of a formal written order reciting exceptional circumstances is the preferred course  a course that will foreclose such ambiguities as we encounter here. But we conceive that the trial court's order on September 6 satisfied the rule. There is complexity enough in the rule as it is written without our adding more formal steps. It is enough that a timely oral ruling was reported, and that it was later transcribed and filed. We decline to rest our decision on the circumstance that the typewritten transcript was filed September 9, before expiration on September 12 of the 180-day period prescribed for trial by the rule. The trial court had jurisdiction to enter the order, State ex rel. Mullins v. Swigert, 345 So.2d 386 (Fla. 1st DCA 1977), and there was no error in its finding of exceptional circumstances.
The order did not extend the speedy trial period for a stated number of days. That was not error. The rule does not require that the trial court extend the speedy trial period for a certain period and then reschedule the trial within that period. The rule states only that, when "an extension of time or continuance" is granted, the court "may set a new trial date within a reasonable time." Here the trial court reset the trial date for October 24, 1977, which was within a reasonable time under the circumstances. We need not consider whether and on what grounds the trial court might thereafter have reset the trial date still later over objection by the accused, for in this case Wilhoit moved for and obtained a continuance of the October 24 trial date in order to seek relief in this court. The speedy trial period was thereby extended for a reasonable time which, considering the purpose for which the continuance was sought, has not yet expired. State v. Kelly, 322 So.2d 581 (Fla. 1st DCA 1975).
Wilhoit is not entitled to discharge from any count in the pending informations for violations of the speedy trial requirements of Fla.R.Crim.P. 3.191.
The prayer of the suggestion for writ of prohibition is GRANTED insofar as it seeks to prevent a trial in case 77-1427 and on count two of case 77-1428, while Wilhoit's nolo contendere pleas, previously accepted, remain pending before the trial court. The relief requested by Wilhoit is otherwise DENIED.
MILLS, Acting C.J., and ERVIN, J., concur.

APPENDIX

 EXCERPTS OF TRANSCRIPT HEARING
 SEPTEMBER 2, 1977
 PROSECUTOR: I, personally, am opposed to the nolo
 contendere plea but in this case I'll accept it . .
 . so that it couldn't be used against the Doctor in
 any civil proceedings. I have talked with all the
 complaining witnesses, the victims in the sexual
 battery cases. None of them are opposed to
 probation. Some of them are not really sure what
 they would like done with him. All of them agree
 that they don't want him practicing any more
 medicine, which I feel by entering his plea that
 that would by taken care of. On the perjury count,
 the State personally feels that the Defendant
 should receive some time of incarceration. The
 [defense counsel] are opposed to that and they feel
 because of certain mitigating circumstances that he
 should be placed on probation for that offense
 also.
 . . . . .
 DEFENSE COUNSEL: ... [W]e would like, if we can
 work it out and if the Court would be so inclined,
 to enter pleas of nolo to all of these sexual
 battery charges and the perjury count and get
 probation and withhold adjudication of guilt ...
*826 COURT: ... [A]s I understand the situation today,
 you [the prosecutor] are agreeable to the entry of
 the nolo contendere pleas and you are agreeable to
 the sexual battery count but you are recommending 
 are you in the position that you would recommend
 incarceration on the perjury?
 PROSECUTOR: If the Court wants to know my feelings
 that would be my recommendation.
 . . . . .
 COURT: When he gives up, is forced to give up, by
 virtue of his plea, a medical practice that
 represents not only a substantial income to him but
 also a lot of prestige in the community for himself
 and his family and he's, he's had a pretty hard
 sentence in that in and of itself.
 PROSECUTOR: I agree with you, Judge, and when you
 impose your sentence I think you should probably,
 if that is your decision, I think you should maybe
 say that for the interest of the community. Because
 they always think 
 COURT: Right 
 PROSECUTOR: The, the wealthy people get off 
 COURT: Right 
 PROSECUTOR: They get off easy 
 COURT: Right 
 PROSECUTOR: And he got off easy because he didn't
 have to go to jail. But really he did suffer.
 . . . . .
 DEFENSE COUNSEL: ... I think this relates to the
 overall punishment. We've got, we've got three sure
 malpractice suits filed against us, we'll be taking
 depositions on the 19th ...
 COURT: ... Is it your [defense counsel's] position
 here today that you want the Court at this time to
 commit as to what sentence would be imposed on all
 counts as a condition of your entry of a plea?
 DEFENSE COUNSEL: Yes sir. We could not agree, under
 any circumstances, to allow Doctor Wilhoit to go to
 jail... .
 . . . . .
 COURT: Would ya'll be agreeable for the Court to
 indicate that I would accept the plea and agree to
 put him on probation and reserve judgment on
 whether or not to adjudge him guilty on the perjury
 charge?
 DEFENSE COUNSEL: Yes sir.
 . . . . .
 COURT: ... I would go for probation based on the
 position of the victims that you've outlined here.
 The ... punishment that Doctor Wilhoit has
 already been subjected to in the loss of his
 position, and the embarrassment and holding out in
 the community, the punishment that he will continue
 to suffer in the form of reduced income and loss of
 his medical practice and those things... .
 . . . . .
 PROSECUTOR: But don't you think this is a proper
 case, Judge, where someone should receive time for
 the perjury to set an example for the other people
 in the community who [are] going to be taking an
 oath?
 COURT: ... No I don't, I don't know that it is.
 Because I'm not sure that this is a typical case of
 perjury... .
 . . . . .
 DEFENSE COUNSEL: Judge, ... I would suggest that we
 have the . . sealed depositions and all of the
 transcript hearings, if necessary, delivered to you
 Tuesday.
 COURT: Okay.
 DEFENSE COUNSEL: Now, Judge, now here's the practical
 point of view and that is; now these jurors ...
 ought to be stopped. The press is going to want to
 know something about the disposition of this case
 and I think we ought to have your guidance with
*827 respect to just how you feel would be the way to
 handle it... .
 . . . . .
 COURT: Well ... of course [the prosecutor] sure
 doesn't like this word "plea bargaining" I'm sure
 of that, but  well, maybe we could say it this
 way. The defense has tendered a plea of nolo
 contendere to the charges, all charges, conditioned
 on the  I hate to say the defendant's going to get
 probation because that would be 
 DEFENSE COUNSEL: Well, I think you could just say
 they've tendered the plea and the court's going to
 consider the evidence ... including the
 presentence investigation 
 COURT: I think that would be the best way to put it.
 ...
 PROSECUTOR: Couldn't we just say that he is going to
 enter a plea of nolo to all charges and there is a
 recommendation, or at least no objection, on behalf
 of all the victims?
 COURT: No, I'm not going to say 
 PROSECUTOR: Now, Judge, he's pled nolo contendere as
 charged. There's no objection on behalf of the
 victims that he receive probation... . There's a
 recommendation on behalf of the State that he be
 incarcerated on the perjury count. The Court
 commended himself to probation on all five
 counts, will withhold adjudication on the four
 sexual battery counts and will reserve ruling until
 time of sentence as to whether or not he'll be
 adjudicated guilty on the perjury count, is that
 correct?
 DEFENSE COUNSEL: That's stated concisely and
 correctly.
 . . . . .
 PROSECUTOR: That's what I am going to say when I
 announce the plea arraignment on Tuesday morning.