PER CURIAM.
This appeal has been brought by the State of Florida from a circuit court order granting the motion of defendant, appellee John Matera, to vacate his conviction and sentence and affording him a new trial.
This case originated in 1967 and has had a long and somewhat involved journey through most of the state and federal courts, including the former Criminal Court of Record of Dade County, the Circuit Court for the 11th Judicial Circuit, the Third District Court of Appeal, the Supreme Court of Florida, the United States District Court for the Southern District of Florida, the United States Fifth Circuit Court of Appeals, and the United States Supreme Court. Without going into detail, we believe that the following comprises the basic history of this case.
In March of 1967, appellee Matera, along with two other defendants, was charged by information in the Criminal Court of Record for Dade County with having committed a robbery of money and jewelry belonging to the Harbor Island Spa, Inc. The case came to trial in May of 1967, and one of the witnesses called by the State during the trial was Bruce Braverman. The State requested that Braverman be declared a hostile witness because of conflicting statements he had made. Upon cross-examination, the prosecutor used New York Grand Jury testimony for impeachment purposes. It was revealed that the New York Grand Jury had also been investigating the defendants. Defense counsel objected to the use of such testimony.
. Braverman’s testimony involved claims of pressure put on him by both Florida and New York officials and claims that he had not wished to testify here in Florida, but was brought down anyway. He stated that he was “deathly afraid” of the New York prosecutor who was in a position to do him “terrible harm.” Another aspect of Braver-man’s testimony involved the question of *1285 whether he was, in fact, actually aware of the criminal matters that had taken place here in Florida and which were involved in the trial at hand. On May 22, 1967, the defense requested that the jury be instructed that the excerpts read from Braverman’s grand jury testimony were offered merely for the purpose of impeachment and had no evidentiary value. Matera submitted a written instruction to that effect, which was granted. This instruction was read to the jury, as well as thorough instructions on the jury’s determination of the credibility of witnesses. A court-directed verdict of not guilty was entered for one of the defendants, and Matera and the third defendant were found guilty as charged by the jury and judgments of guilt were thereafter entered. Matera was sentenced to life imprisonment.
On appeal from the conviction,[1] the defendant raised several points. This court affirmed the conviction and sentence, holding that no prejudicial error had been committed with regard to the fact that Braver-man had been called as the court’s witness nor in the manner of cross-examination, in view of the thorough, limiting jury instruction which was given by the trial judge. This court declined to rule on the objection that minutes of the first New York Grand Jury appearance of Braverman had not been produced at trial. Thereafter, the Supreme Court of Florida denied the defendant’s petition for writ of certiorari.
Motions to vacate were filed in the trial court in 1970 and 1971, with the two convicted defendants alleging that they had just learned of exculpatory material that would impeach Braverman’s trial testimony. The nature of this material was that the witness had made contradictory statements at a grand jury appearance other than the one used by the State to impeach him at trial, and that Braverman really did not know anything about the Harbor Island Spa robbery but had been pressured into testifying otherwise before the New York Grand Jury. All the motions were denied, from which an appeal was taken, with this court ruling that the only asserted ground not refuted by the trial record or foreclosed by the first appeal was the allegation that the State had withheld evidence known to be useful to the defendant for impeachment purposes. Accordingly, this court ordered an evidentiary hearing.[2] The State of Florida then filed a petition for writ of certiora-ri, which was granted by the Supreme Court of Florida. That court ruled that the unsupported charges made by the defendants in their motions to vacate were insufficient to require an evidentiary hearing where the record affirmatively revealed fatal flaws in the grounds alleged.[3]
The next series of judicial considerations of this matter was initiated by Matera filing a petition for writ of habeas corpus in the United States District Court for the Southern District of Florida. The District Court dismissed the petition for failure to exhaust state remedies,[4] and Matera then filed petitions for writs of habeas corpus in this court[5] and the Supreme Court of Florida.[6] Both petitions were denied.
Thereafter, Matera and the other convicted defendant filed petitions for writs of habeas corpus in the United States District Court for the Southern District of Florida, raising several issues, two of which are relevant here: (1) That the State had withheld evidence of grand jury testimony which it knew to be useful and exculpatory to the defendant and which would have impeached the testimony of witness Braver-man; (2) that the State employed the use of illegal wiretaps which led to the arrest and prosecution of the defendant. An eviden- *1286 tiary hearing was held in the United States District Court on July 28, 1975, resulting in the granting of relief on the narrow issue that the State had failed to furnish the defendants with the transcripts of Braver-man’s third grand jury testimony, when it used the fourth appearance of Braverman before the grand jury to impeach him at the defendants’ trial, thereby giving rise to a clear Brady violation.[7] On appeal to the United States Fifth Circuit Court of Appeals, the United States District Court was reversed, with the Circuit Court of Appeals holding that the two defendants had failed to exhaust their state remedies with respect to some of the issues raised in their petition.[8] Pursuant to an en banc rehearing,[9] the Circuit Court of Appeals ruled on the merits of the Brady claim and agreed with the Florida Supreme Court’s conclusion that Braverman had been so effectively impeached with the apparent substance of his third grand jury testimony that the failure to supply the testimony to defense counsel was not constitutional error under the standards expressed by the U.S. Supreme Court.
In December of 1978, Matera and the other convicted defendant filed a joint motion to vacate in the Circuit Court for the 11th Judicial Circuit of Florida. The defendants asked the court to “enter its Order Granting Defendants’ an Evidentiary Hearing so that they may submit to this court the plethora of material disclosing the illegality and basic unconstitutionality of their trial and conviction.” At a hearing on the motions on December 19, 1978, the circuit judge indicated a familiarity with the case and with the applicable decision of the United States Fifth Circuit Court of Appeals. The prosecutor stated not only his unfamiliarity with the case, but also the fact that he had not even seen the motion. The case was rescheduled for December 22, at which time the court called the case and indicated that from a reading of the Federal court records, the court had the intention “of ending a bad story this morning.” The court went through a history of the case and stated a further intention of granting the motion to vacate. During the proceedings, the court noted the State’s objection “to anything and everything that is occurring.”
The court granted the motion to vacate, stating no specific grounds therefor, but stating that the transcript of testimony before the United States District Court revealed “constitutional deprivations” not ruled upon by the United States District Court judge. The court felt that a further evidentiary hearing would be unnecessary based upon a reading of that transcript.
After the oral granting of the motion, defendant Matera changed his plea of not guilty to nolo contendere, and was then sentenced to a term of probation of 15 years with the special condition that he serve nine years in prison with credit to be given for the nine years he had already spent in prison. The State then filed a timely notice of appeal from the circuit court order granting the motion to vacate.
We have considered very carefully the actions employed by the trial court at the December 22, 1978, proceedings, and we hold that insofar as the State was thereby deprived of a reasonable opportunity to effect appellate review of the granting of the motion to vacate, such actions were erroneous, requiring a reversal of the vacating of the defendant’s conviction and sentence and the dissolving of any subsequent rulings incident thereto and dependent thereon.-
Initially, we are concerned with our duty to see that procedural safeguards are maintained. We are not concerned at this time with the question of the merits of the defendant’s case or the factual correctness of the trial court’s decision.
Accordingly, we note that although those doors open to the State in initiating appel *1287 late review are limited to a specific set of circumstances, see Sections 924.07 and 924.-071, Florida Statutes (1977), and Fla.R. App.P. 9.140(c), nevertheless, insofar as such doors do exist, the appellate courts must be ever-watchful to assure that all of them remain open.
When the trial court accepted the nolo contendere plea and, in the same proceedings, resentenced the defendant, the State was seemingly precluded from exercising its right to appeal the court’s former action of granting the defendant’s motion to vacate. See the law in Ray v. State, 231 So.2d 813 (Fla.1969); and State ex rel. Wilhoit v. Wells, 356 So.2d 817 (Fla. 1st DCA 1978). This was error. Unquestionably, a primary consideration of the criminal justice system is to expedite litigation, and this principle is well-expressed by the adage that “justice delayed is justice denied.” But, the concept of “justice” is a two-sided coin, demanding utilization of procedures that deprive neither the defendant nor the State of the full and timely employment of those rights and privileges extended to each of them under the law. Cf. State v. Young, 283 So.2d 58 (Fla. 1st DCA 1973). This includes the State’s right of appeal, which the courts will attempt to protect even in the face of procedural irregularities. See, e. g., Jenkins v. Lyles, 223 So.2d 740 (Fla.1969).
In this instance, the State was effectively precluded from exercising its right of appeal, apparently under Fla.R.Crim.P. 3.850 and Fla.R.App.P. 9.140(c)(1)(C), both of which form an integral part of the State’s machinery in prosecuting criminal matters. Although we work under an adversarial system of law, with the major burdens resting upon the State in criminal matters, nonetheless, no procedural maneuver of the sort now under consideration may be undertaken by defense counsel and acted upon by the court — even where such action is superficially valid — when a direct by-product of that procedure is the thwarting of a basic right of appeal granted to the State by statute. See Section 924.07, Florida Statutes (1977). The occasions upon which the State may appeal being strictly limited, it is our duty to protect these rights as carefully as we must protect those of the defendant.
Finally, we are not unmindful of the allegations of a possible double jeopardy question in this case. We believe, however, that inasmuch as the act of vacating the original judgment and sentence was not given its full rein so as to be susceptible to appellate review, the act thereby was rendered invalid and, accordingly, there was no judicial act to which double jeopardy could attach. In a meaningful sense, the matter of the granting of the motion to vacate was not final until the State, within the time limits allowed by law, either chose to exercise or not to exercise the appellate route open to it. In other words, it would appear that the court proceedings had not been fully concluded. Cf. United States v. Martin, 28 F. 812 (W.D.S.C.1886).
Having determined that the State must be accorded its right to appeal the vacating of the defendant’s conviction and sentence and that the subsequent actions of the trial court thereby became invalid, we further hold that the vacating of the defendant’s conviction and sentence must also be reversed. In this regard, we find that the transcript of the federal proceedings, relied upon by the trial judge in granting the motion to vacate, standing alone, does not meet the standard of evidence needed for a movant successfully to negotiate a Rule 3.850 procedure. Accordingly, we hold that there should have been a full eviden-tiary hearing. See State v. Gomez, 363 So.2d 624 (Fla. 3d DCA 1978). And see State v. Weeks, 166 So.2d 892 (Fla.1964).
The cause is, therefore, reversed and the question of the defendant’s motion to vacate his conviction and sentence is remanded for a full evidentiary hearing on the merits.
Reversed and remanded.

. Matera v. State, 218 So.2d 180 (Fla.3d DCA 1969).

. Matera v. State, 254 So.2d 843 (Fla.3d DCA 1971).

. State v. Matera, 266 So.2d 661 (Fla.1972).

. Matera v. Florida, Case No. 73-2-Civ-JE (S.D.Fla. March 8, 1973).

. State ex rel. Matera v. Wainwright, 277 So.2d 611 (Fla.3d DCA 1973).

. Matera v. Wainwright, Case No. 44,077 (Fla. December 18, 1973).

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. Galtieri v. Wainwright, 545 F.2d 942 (5th Cir. 1977).

. Galtieri v. Wainwright, 582 F.2d 348 (5th Cir. 1978).